RACINE COUNTY NATIONAL BANK, Appellant, v. AETNA CASUALTY & SURETY COMPANY, Respondent.*

*No. 299. Argued November 27, 1972.—Decided January 15, 1973.*
(Also reported in 203 N. W. 2d 145.)

* Motion for rehearing denied, with costs, on March 27, 1973.

For the appellant there were briefs by *Schoone, Mc-Manus & Hanson, S.C.,* attorneys, and *Robert J. Grady* of counsel, all of Racine, and oral argument by *Adrian P. Schoone.*

For the respondent there was a brief by *Borgelt, Powell, Peterson & Frauen,* attorneys, and *Thomas N. Klug* and *Thomas H. Knoll* of counsel, all of Milwaukee, and oral argument by *Mr. Klug.*

BEILFUSS, J.   The issue before us is:

Was the loss sustained by the bank due to the nonpayment of the loan so as to bar the bank's recovery under the loan exclusion clause contained in the bond?

The appellant argues that the bond covers the loss of surrendered securities because it was fraudulently induced to release them to Studey and because the securities were within the definition of property and covered by insuring clause (B).  This contention is founded on the supposition that there is a difference between a loss due to nonpayment of a loan and a loss due to the fraudulent procurement of collateral security [3] which secured the

---

[3] "Collateral security," in bank parlance, means some security additional to the personal obligation of the borrower. It implies the transfer to the creditor of an interest in some property, or

loan. Granted that there is this technical difference, the relevance of the distinction disappears upon analysis of the facts. The facts plainly show that the loss due to the missing securities was dependent upon the nonpayment of the loan. The loss occurred because all of these transactions were so intertwined with the basic loan agreement that to segregate them to support the bank's position would make the exclusion provisions in the bond meaningless. The bond specifically excluded under section 1 (d) all losses which are the result of the complete or partial nonpayment of or default of any loan made or obtained from the insured, notwithstanding trick, artifice, fraud or false pretenses.

Basic to the entire transaction or transactions with Studey was the loan. The bank, of course, expected the loan to be repaid plus interest. To secure the loan, Studey and his wife gave their written promissory note and, as additional collateral, the securities. It was the failure to repay the loan that caused the loss. If Studey had paid the loan the bank would have suffered no loss because of its inability to return the securities to Studey.[4]

With respect to this analysis on these issues in question, there are no Wisconsin cases directly in point but there are some federal and other state cases which have dealt with the problem. Those courts have held that an exclusion clause similar to the one at bar negates coverage under the bond. Those courts reason that if it were not for the loan there would be no loss because the immediate and primary cause of the loss resulted from the nonpayment of the loan.[5] The appellant proffers no case

obligation which furnishes a security in addition to the responsibility of the debtor. *James Employees Credit Union v. Hawley* (1958), 2 Wis. 2d 490, 87 N. W. 2d 299.

[4] *Maryland Casualty Co. v. State Bank & Trust Co.* (5th Cir. 1970), 425 Fed. 2d 979.

[5] *Depositors Trust Co. v. Maryland Casualty Co.* (1961), 157 Me. 493, 174 Atl. 2d 288; *East Gadsden Bank v. United States .*

which really substantiates its position. Several cases are cited but they are distinguishable and not comparable to the facts of this case.

Appellant next argues that the securities were purloined by means of false pretenses from the bank's possession. This, in effect, is the same argument guised in different language. Even if one could steal his own securities by false pretenses from the bank, such act would still permeate the entire loan transaction in the instant case. The several courses of dealings between the parties were not independent and distinct acts, but a series of acts interrelated to the loan which Studey did not pay.

The bank also argues that a paid insurance or indemnity contract must be construed most favorably to the insured. The law states that when an indemnity bond is entered into for consideration, it partakes all of the essential features of insurance contracts and should be construed most strongly against the party preparing and furnishing the bond. *Forest County v. United Surety Co.* (1912), 149 Wis. 323, 136 N. W. 335, and *First Nat. Bank v. United States Fidelity & Guaranty Co.* (1912), 150 Wis. 601, 137 N. W. 742. But because it has the characteristics of an insurance contract, not just one but all of the doctrines of construction for insurance policies apply. In *Leatherman v. American Family Mutual Ins. Co.* (1971), 52 Wis. 2d 644, 190 N. W. 2d 904, this court held that the doctrine of strict construction of such policies does not apply unless an ambiguity exists. In this case we find no ambiguity with respect to insuring clause (B) and the exclusion clause 1 (d).

*Fidelity & Guaranty Co.* (5th Cir. 1969), 415 Fed. 2d 357; *Community Federal Savings & Loan Asso. v. General Casualty Co.* (8th Cir. 1960), 274 Fed. 2d 620; *Maryland Casualty Co. v. State Bank & Trust Co., supra;* and *First National Bank of Memphis v. Aetna Casualty & Surety Co.* (6th Cir. 1962), 309 Fed. 2d 702.

The exclusion clause did not specifically except coverage insuring clause (B) from its effects as it did with the other three broad insuring clauses in the contract. Rather, the clause negated the full force and effect of only insuring clause (B). This provision specifically excludes losses procured by artifice, fraud, and false pretenses resulting from the nonpayment of loans. The language of the exclusion is unequivocal and should be given its plain meaning as written. The lack of ambiguity therefore precludes the application of the rule of strict construction and the loss claimed is excluded from coverage.

*By the Court.*—Judgment affirmed.