BRADLEY BANK, Plaintiff,

v.

HARTFORD ACCIDENT AND INDEMNITY COMPANY, Defendant.

No. 82–C–62.

United States District Court,
W.D. Wisconsin.

Feb. 2, 1983.

Leonard F. Schmitt, Merrill, Wis., for plaintiff.

Bruce Gillman, Madison, Wis., for defendant.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Before the Court are cross motions for summary judgment in this action on a contract of insurance. For the reasons set forth in the memorandum below, plaintiff's motion is denied and defendant's motion is granted.

Jurisdiction is based on 28 U.S.C. § 1332; the parties are of diverse citizenship and the amount in controversy exceeds $10,000.

The parties have submitted a thorough stipulation of facts which the Court adopts as its own statement of undisputed facts. A summary of the facts necessary for the decision in this matter follows:

### FACTS

Plaintiff is an incorporated commercial bank located at Tomahawk, Wisconsin (hereinafter, the bank). Defendant is an insurance corporation domiciled in Connecticut (hereinafter, the insurer).

At all times material to the complaint, a contract of insurance existed between the parties wherein the insurer agreed to insure the bank against a number of loss risks. The insurance agreement was entitled "Bankers Blanket Bond" which was subheaded "Standard Form No. 24, Revised in April, 1969." The bank took no part in drafting the contract, but accepted it as presented by the defendant. The contract had seven standard insuring agreements, enumerated "A" through "G." Insuring agreement "B," denominated "On premises," covered, among other things:

Loss of property (occurring with or without negligence or violence) through ... false pretenses ...

Property was defined as money and virtually anything else of monetary value.

The contract also contained a number of exclusions, some of which were attached as riders. Among these was the following:

The Underwriter shall not be liable under the attached bond for:

Loss resulting from payments made or withdrawals from any depositors account which has been credited with items of deposit which are uncollected for any reason, including forgery, unless such payments are made to, or withdrawn by, such depositor or representative of such depositor who is within the office of the insured at the time of such payment or withdrawal, or unless such loss is covered under Insuring Agreement Clause (A).

From about February 1, 1979, a checking account under the name of "Midway Chrysler-Dodge, Inc." (hereinafter, Midway), was maintained at the bank by one Donald E. Schnabel. It was the custom and policy of the bank to immediately credit the account of Midway whenever Schnabel made deposits consisting of checks. The bank also permitted Schnabel to make immediate withdrawals against such deposits.

Schnabel also maintained a checking account under the name of "Don Schnabel Chevrolet-Olds" at the Lincoln County

Bank in Merrill, Wisconsin, about 22 miles from the plaintiff bank in Tomahawk.

Both of the automobile dealerships operated by Schnabel were in Tomahawk.

On July 2, 1981, Schnabel drew a check on the account of Don Schnabel Chevrolet-Olds at the Lincoln County Bank in the sum of $19,727.41 payable to Midway. This check was deposited personally or by agent on the premises of plaintiff bank into the Midway account on July 3, 1981.

A second check on the Lincoln County Bank account was drawn on July 3, 1981 for $17,114.28 payable to Midway. This check was also deposited into the Midway account on July 3, 1981 by Schnabel or an agent on the premises of plaintiff bank.

A third check on the Lincoln County Bank account was drawn on July 4, 1981 for $16,891.09 payable to Midway. This check was deposited into the Midway account on July 6, 1981 by Schnabel or an agent on the premises of plaintiff bank.

On July 9, 1981, the Lincoln County Bank returned to the Federal Reserve Bank in Minneapolis the aforementioned three checks, stamped "Returned Not Paid-Uncollected Funds—7–9–81."

On July 1, 1981, Schnabel drew a check on the Midway account at plaintiff bank in the amount of $16,891.09 payable to Don Schnabel Chevrolet-Olds. The check was deposited in the Lincoln County Bank account on the same day.

A second check was drawn on the Midway account at plaintiff bank, and payable to Don Schnabel Chevrolet-Olds, for $14,487.50, on July 2, 1981. The check was deposited on the same day.

A third check was drawn on the Midway account at plaintiff bank, and payable to Don Schnabel Chevrolet-Olds, for $20,813.34 on July 3, 1981. The check was deposited in the Lincoln County Bank on the same day.

A fourth check was drawn on the Midway account at plaintiff bank, and payable to Don Schnabel Chevrolet-Olds, for $22,170.44, on July 4, 1981. The check was deposited in the Lincoln County Bank on the same day in its night depository. The check was credited on July 6, 1981.

The total of uncollected funds checks deposited in the plaintiff bank by Schnabel from the Lincoln County Bank account of Don Schnabel Chevrolet-Olds was $53,732.78. Plaintiff bank claims it was damaged in the amount of $45,270.72, the difference apparently representing the positive balance in the Midway account immediately before the account was debited for the uncollected funds deposits, in August, 1981. After applying the $1,000 deductible to its loss, plaintiff bank claimed $44,270.72.

The insurer refused to pay the loss, claiming that the exclusion quoted above covers the facts as outlined.

Schnabel was not physically present on the premises of plaintiff bank when he drew the four checks on the Midway account payable to Don Schnabel Chevrolet-Olds.

Plaintiff bank has obtained partial satisfaction of its losses from Schnabel during the course of this litigation. Payments made by Schnabel to plaintiff bank in this regard have been subjected to interest charges and attorney fees prior to being credited against overdrafts on the Midway account.[1]

## MEMORANDUM

The decision in this matter is preliminarily subject to a number of general principles: First, state substantive law applies to diversity actions and the law of the forum state governs. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Kalmich v. Bruno,* 553 F.2d 549 (7th Cir.1977) *cert. den.,* 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300, on remand, 450 F.Supp. 227 (N.D.Ill.1978). Second, in Wisconsin, contracts of insurance

1. Since the Court does not reach the issue of the significance of such actions, the Court will forego a more detailed description of these transactions. The Stipulated facts, which are adopted for purposes of this decision, would provide sufficient bases for decision if it were necessary.

are governed by the same legal principles as other contracts. *Garriguenc v. Love,* 67 Wis.2d 130, 226 N.W.2d 414 (1975). Third, when the language of a contract is plain and unambiguous, there is no need to consider or apply rules of construction. *Amidzich v. Charter Oak Fire Ins. Co.,* 44 Wis.2d 45, 170 N.W.2d 813 (1969). *William B. Tanner Co., Inc. v. Sparta-Tomah Broadcasting Co.,* 543 F.Supp. 593 (W.D.Wis.1982).

■ In *Racine County National Bank v. Aetna Casualty & Surety Co.,* 56 Wis.2d 830, 203 N.W.2d 145, 149 (1973), the Supreme Court of Wisconsin stated unequivocally that, absent ambiguity, there is no reason to apply the doctrine of strict construction of insurance contracts against the insurer. This case is particularly pertinent here because the contract at issue in that case was the Bankers Blanket Bond, although the question there concerned a different exclusion.

■ There is little doubt here, and the Court does not understand defendant insurer to argue otherwise,[2] that insuring clause (B) covers the loss suffered by the bank through the machinations of Schnabel. The loss was of money by false pretenses, and the cases cited by the bank show the weight of authority behind that position. *See particularly: National Bank of Commerce in New Orleans v. Fidelity and Casualty Co.,* 312 F.Supp. 71 (E.D.La.1970). The Court does not find this case, nor the cases cited therein, to be outdated for purposes of showing coverage under Clause (B). Nor is the issue irrelevant, as defendant insurer submits, because if the bank's claim is not covered by one of the insuring agreements, there is no need to resort to, or interpret or construe, an exclusion.

Schnabel's actions here constitute what is commonly referred to as "check kiting." As plaintiff characterizes the transactions, Schnabel wrote checks on his Midway account payable to his account at the Lincoln County Bank, and almost simultaneously (for purposes of the banking business) wrote checks from his Lincoln County Bank account to his account at plaintiff bank in order to induce, under false pretenses, the plaintiff bank to honor his checks. Plaintiff bank did so and suffered a loss. "Check kiting" has been defined as "a transfer of funds between two or more banks to obtain unauthorized credit from the bank during the time it takes the checks to clear." *State v. Woodington,* 31 Wis.2d 151, 142 N.W.2d 810 (1966).[3]

In that check-kiting constitutes loss of property through false pretenses, *Nat'l Bank of Commerce,* supra, the question is whether the exclusion for uncollected funds losses denies plaintiff bank coverage for the loss here. The Court concludes that the exclusion applies to the facts here clearly and unambiguously.

The Court does not believe that plaintiff bank is contending that the following language is, in any way, ambiguous:

The underwriter shall not be liable under the attached bond for:

Loss resulting from payments made or withdrawals from any depositor's account which has been credited with items of deposit which are uncollected for any reason, including forgery, . . .

The loss occurred because Schnabel's Midway account at plaintiff bank had been credited with items of deposit that were uncollected because there were insufficient funds in Schnabel's Lincoln County Bank

---

**2.** Defendant does cite one case which holds that a check-kiting loss is one occasioned by default on a loan. *See Citizens National Bank of St. Petersburg v. Travelers Indemnity Co.,* 296 F.Supp. 300 (M.D.Fla.1967). This Court believes this decision to be plainly wrong. See the discussion of "loan" in this context at *First National Bank of Decatur v. Insurance Company of North America,* 424 F.2d 312, 316 (7th Cir.1970).

**3.** For whatever reason, defendant attempts to characterize the scheme differently. The Court is not convinced that defendant's distinctions make any difference. Whether the loss occurred directly from the transfer between banks or because of an overdraft at plaintiff bank sometime later, it was the transfer between the banks in the first place which is responsible for the loss. Absent the transactions enumerated in the facts above, the overdraft would not have occurred.

account to cover the items of deposit. The loss, finally, resulted from payments or withdrawals made by plaintiff bank from Schnabel's account (whether the payments were checks to third parties, or withdrawals made through checks written to Schnabel's Lincoln County Bank account).

Plaintiff bank's contention is that the exception to the exclusion is ambiguous. That exception, which follows immediately after the exclusion quoted above, is:

> ... unless such payments are made to, or withdrawn by, such depositor or representative of such depositor who is within the office of the insured at the time of such payment or withdrawal ...[4]

Plaintiff's contention of ambiguity centers on the phrase "within the office of the insured," and is subjected to two main arguments.

First, plaintiff finds fault, and therefore ambiguity, because the language is not "physically within" or "present within" or "then within." Relying on cases which subject insurance contracts to strict construction against the insurer, plaintiff suggests that the burden is on the defendant to show that the interpretation favoring it is the only reasonable reading of the language in question. *See Pan American World Airways v. Aetna Casualty and Surety,* 505 F.2d 989 (2nd Cir.1974).

The *Pan Am* case was decided under New York law which applied the rule of strict interpretation against the insurer. In Wisconsin, there must be some indication of ambiguity before applying the rule. *Racine County National Bank,* supra. This Court cannot find ambiguity in the word "within" in this context. "Within":

> is in general use and is well understood, and that it has often been judicially defined, but that it is not one of such preciseness as to have but one meaning, and that it has a variety of meanings

according to the connection in which it is used.

\* \* \* \* \* \*

> The preposition "within" is used in expressions of place ... it is variously defined as meaning in; inside of; inside the limits, reach or influence of; in the limits or compass of; in the inner or interior part, or side of; into; not beyond overstepping, or the like; not exceeding; not exceeding in quantity or degree; not going outside of; not outside of; not without; not further in length; on; through.

97 C.J.S. 329–330 (footnotes omitted).[5]

The facts of this case do not present a reasonable question about whether Schnabel was constructively within the bank when he made the withdrawals. It is not contended that Schnabel withdrew the money at a branch office, or through an electronic machine, or through a telephone conversation with a bank officer, that is, situations which might present a question of constructive presence. It is undisputed that he was not within the premises of the bank when he wrote the checks which caused the loss.

In other words, the definitions above, or any other reasonable interpretation of the word "within," will not allow recovery under the exception to the exclusion.

Plaintiff's second contention, a much stronger one, depends on the case of *Clarendon Bank & Trust v. Fidelity and Deposit Company of Maryland,* 406 F.Supp. 1161 (E.D.Va.1975). The bank had lost money through honoring the checks of one of its depositors. The Court first held that the check-kiting exclusion at issue here did not cover the transactions because there was no evidence of two bank accounts which the Court felt was necessary to come within the exclusion. The Court went on to say that, even if the exclusion applied, the insurer was liable because of the exception at issue here.

---

**4.** A second exception to the exclusion follows which is not applicable here.

**5.** No Wisconsin cases define "within" in the context presented in this case. The case cited

by defendant, *State ex rel. Schauer v. Risjord,* 183 Wis. 553, 198 N.W. 273 (1924), contains some superficially helpful language, but concerned "within" in the context of a time period.

The bank's customer in *Clarendon* presented various items of deposit to the bank personally which would be "sight posted" by the bank officer, thus irrevocably committing the bank to make payments from the customer's account balance including the sight posted items of deposit, by treasurer's checks which may or may not have been immediately issued. Some of the items of deposit proved to be uncollectible. It was the Court's view that:

> These commitments were "payments" and "withdrawals" within the terms of the bond. [The customer] during [his] physical presence on the plaintiff's premises, received unqualified approval to rely on his deposits. Furthermore, it was confirmed to [the customer] that Treasurer's checks would be issued as a result to these deposits.

> \*   \*   \*   \*   \*   \*

> There is no dispute that several and possibly all the Treasurer's checks were physically drawn up when [the customer] was not on the plaintiff's premises. This is merely the mechanical effect of [the customer's] withdrawal after [the bank officer's] sight posting of the deposits. Plaintiff had made the "payments" and "withdrawals" at the time of the meetings [between the bank officer and the customer] although the technical drafting of the Treasurer's checks had not transpired at this time.

*Id.* at 1172.

It is the above scenario that plaintiff suggests should apply to the facts in this case. It is by virtue of the plaintiff bank's commitment to honor Schnabel's items of deposit that plaintiff attempts to fit this case into the *Clarendon* holding.

This contention has some merit on the surface, but a closer examination of the kind of "commitment" in *Clarendon* compels this Court to reject plaintiff's argument. In the Court's recitation of the facts, the following description of the procedure which took place with the customer in the bank is found:

> [The bank officer] would add up the deposits and would be told by [the custom-

er] what drafts which had been drawn by others on [the customer's account] for its purchases should be paid from the funds so deposited. [The bank officer] would then "sight post" the deposit and would thereby commit [the bank] to pay the drafts selected . . .

*Id.* at 1163. It is this fact which led the *Clarendon* Court to hold that the customer was present when payments and withdrawals were made. The customer's instructions while present constituted the payments. The bank merely carried out the instructions, albeit at a later time. While the customer was present, the bank was aware of how much it had committed itself vis a vis the deposits.

A different situation is presented here. It is arguable that the plaintiff bank committed itself to honor Schnabel's deposits in general when he personally made the deposits. But specific payments or withdrawals were not enumerated by him at that time, as was the case in *Clarendon.* It could be argued that the distinction makes no difference when considered in the context of the banking business. But it is clear that it makes a difference under the terms of the Bankers Blanket Bond. The transaction in *Clarendon* was covered under the bond because specific payments were authorized by the customer while present in the bank at the time of the deposits. In this case, the payments or withdrawals were made at a later time after the customer had left the premises.

This Court must therefore conclude that the transaction at issue in this suit is subject to the uncollected funds exclusion in the Bankers Blanket Bond, and is not subject to the exception to the exclusion. This decision rests on the plain meaning of contract.

The Court specifically declines to base this decision on the case of *First National Bank of Miami v. Insurance Company of North America,* 495 F.2d 519 (5th Cir.1974) which held that the uncollected funds exclusion at issue here was added to the Bankers Blanket Bond for the specific purpose of

excluding check-kiting losses. That Court based its decision on the evidence that the drafters of the exemption intended the exclusion to apply to losses from check-kiting schemes. Although this decision provides some reinforcement for this Court's position, defendant here did not provide the evidence on which the Fifth Circuit based its decision.[6]

Nor does this Court base its decision on the language in *State Bank of Viroqua v. Capitol Indemnity Corp.,* 61 Wis.2d 699, 214 N.W.2d 42 (Wis.1974) where the Wisconsin Supreme Court stated, in a footnote, that, because the Bankers Blanket Bond was a product of negotiation between the Surety Association and the American Bankers Association, the rule of strict construction against the insurer should not apply. The statement may not, as plaintiff asserts, even rise to the level of dictum. However, if this Court had been forced to face the issue, it would have been compelled to follow this approach. The contrary holding of the Court in *First National Bank of Decatur v. Insurance Company of North America,* 424 F.2d 312 (7th Cir.1970), cert. denied, 398 U.S. 939, 90 S.Ct. 1844, 26 L.Ed.2d 272, based on the proposition that the individual bank did not negotiate the terms, was decided under the law of Illinois. This Court sits, in diversity, as a court of the State of Wisconsin and would decide this issue on the basis of the latest statement of the state's highest court, whether dicta or not. *Hartzler v. Chesapeake and Ohio Railway Co.,* 433 F.2d 104 (7th Cir.1970). Even if this Court could conclude that there was some ambiguity in the terms of the contract, the Court could not adopt plaintiff's strained interpretation of the term "within."

Accordingly,

## ORDER

IT IS ORDERED that plaintiff's motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that defendant's motion for summary judgment is GRANTED.

6. The Court notes that the same evidence was

Let judgment be entered accordingly in favor of the defendant, dismissing plaintiff's complaint with prejudice and costs.

presented to the Court in *Clarendon,* supra.