**BRADLEY BANK, Plaintiff-Appellant,**

v.

**HARTFORD ACCIDENT AND INDEMNITY COMPANY, a Connecticut corporation, Defendant-Appellee.**

Nos. 83–1476, 83–1727.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 8, 1983.

Decided June 18, 1984.

Leonard F. Schmitt, Schmitt, Hartley, Andorfer & Schnabel, Merrill, Wis., for plaintiff-appellant.

Bruce Gillman, Tomlinson, Gillman & Gravers, Madison, Wis., for defendant-appellee.

Before PELL, CUDAHY and POSNER, Circuit Judges.

PELL, Circuit Judge.

The plaintiff, Bradley Bank, appeals from the district court's grant of summary judgment to the defendant, the Hartford Accident and Indemnity Company. The parties submitted the case to the district court for decision on cross motions for summary judgment. The court determined that the insurance contract at issue unambiguously excluded coverage for the plaintiff's loss. The primary issue on appeal is whether the district court was correct in finding that the policy was unambiguous. The plaintiff also appeals from the denial of its Rule 60(b) motion for relief from judgment based upon allegedly newly discovered evidence.

## I. THE FACTS

The defendant issued an insurance policy, commonly known as a banker's blanket bond, to the plaintiff to insure the bank against a number of risks common to the banking industry. The policy covered loss of property through false pretenses, but excluded from that coverage the following:

Loss resulting from payments made or withdrawals from any depositor's account which has been credited with items of deposit which are uncollected for any reason, including forgery, *unless* such payments are made to, or withdrawn by, *such depositor* or representative of such depositor who *is within the office of the insured at the time* of such payment or withdrawal ....

(Emphasis added.) Construction of the highlighted exception to the uncollected funds exclusion is the issue now before us.

The plaintiff was a victim of a classic check kiting scheme in July 1981. One of its depositors also maintained an account at another bank in a nearby Wisconsin town. Each account was in the name of one of the depositor's two car dealerships. He drew several substantial checks on the account of one dealership payable to the second dealership, whose account was with the plaintiff. He deposited these checks in the plaintiff's bank. He then drew checks on the account maintained with the plaintiff, which he proceeded to deposit at the nearby bank, thus presenting the illusion that both accounts had substantial funds. The parties agree that the plaintiff's customer was not physically at the plaintiff bank when he issued the checks drawn on the account he there maintained. The plaintiff then honored a number of checks drawn on its account by the customer. The total loss to the plaintiff from the checks deposited in its account for which it never collected funds was over $45,000. For further details of the check kiting scheme, see the district court's opinion at 557 F.Supp. 243, 244–45 (W.D.Wis.1983). The plaintiff thereafter made a claim to the defendant based upon this loss, but the defendant refused to pay the claim, alleging that the exclusion quoted above relieved it of any obligation to pay.

The plaintiff asserts on appeal, as it did below, that the phrase "within the office of the insured," in the exception to the uncollected funds exclusion, is ambiguous. Therefore, the plaintiff claims, this court should construe the phrase most strongly against the insurer in accordance with the traditional method of insurance-policy construction.

The district court upheld the defendant's denial of coverage, finding the language to require, without ambiguity, that the only way losses from uncollected funds merited coverage was if the depositor was physically within the office of the insured at the time the bank made payments out of the account. Because the depositor was not present at the time of payment, the district court held that the policy excluded coverage for the plaintiff's loss.

After the initial decision of the district court, the plaintiff filed a motion, which it entitled "motion to vacate," pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. The filing occurred more than ten days after the decision, and consequently no relief was available under Rule 59(e). The basis for the Rule 60(b) motion was newly discovered evidence. After the execution of the check kiting scheme by the plaintiff's depositor, but before the plaintiff brought this suit, the parties renewed their contract of insurance. The renewed agreement contained an amended uncollected funds exclusion. The pertinent change is in the exception to the exclusion, which now reads: "unless such payments or withdrawals are *physically* received by such depositor ... who is within the office of the insured at the time ...." (Emphasis added.) The plaintiff claimed that this amendment was evidence of the defendant's attempt to make unambiguous the provision that the plaintiff had claimed to be ambiguous.

The district court applied the five-part test adopted in *United States v. Walus*, 616 F.2d 283, 287–88 (7th Cir.1980), to determine when relief under Rule 60(b) was appropriate. The court concluded that the plaintiff satisfied the first four prerequisites, that the movant established its due diligence and that the evidence was material, was not cumulative, and was discovered after trial. 562 F.Supp. 241, 242 (W.D.Wis. 1983). The district court held, however, that the plaintiff could not establish that the

evidence would probably produce a new result, the fifth requirement. The court maintained that the word "physically" does not modify "within the office of the insured," but rather requires that the depositor physically receive payment while within the bank. The court read the modification as a response to the decision in *Clarendon Bank & Trust v. Fidelity and Deposit Co.,* 406 F.Supp. 1161 (E.D.Va.1975), wherein the court held the insurer liable for losses suffered when the bank sight posted certain deposits in the presence of the depositor, although the depositor did not physically *receive* the funds while on the bank premises. Furthermore, the court stated that the rule of strict construction against the insurer would not apply in this case because the banker's blanket bond was the product of negotiations between the banking and surety industries. Therefore, the court concluded, the plaintiff could not show a probable change in result.

On appeal, the plaintiff raises the same arguments that it asserted below. In brief, the plaintiff asserts that the exclusion provision of the bond is ambiguous, and, therefore, the court should construe the exclusion against the insurer and find that the exception to the exclusion applies.

## II. THE DECISION

■ The parties agree, as they must, that the substantive law of Wisconsin governs this diversity action. *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Consequently, Wisconsin law on the subject of the construction of insurance contracts provides the basis for the analysis in this case. The Wisconsin courts hold that, in general, construction of insurance policies is a question of law, which may be redetermined independently on appeal. *Kraemer Bros. v. United States Fire Insurance Co.,* 89 Wis.2d 555, 561, 278 N.W.2d 857, 860 (1979). Construction only becomes a fact question in "case of ambiguity where words or terms are to be construed by extrinsic evidence ...." *Id. Accord Herwig v. Enerson & Eggen,* 98 Wis.2d 38, 40, 295 N.W.2d 201,

203 (Ct.App.1980), *aff'd,* 101 Wis.2d 170, 303 N.W.2d 669 (1981). In the present case, our initial inquiry is to determine whether the provision is unambiguous, and, if it is we then are free to construe it.

■ Under Wisconsin law:
Words or phrases in a contract are ambiguous when they are reasonably or fairly susceptible to more than one construction. However, when the terms of a policy are plain on their face, the policy should not be rewritten by construction to bind the insurer to a risk it was unwilling to cover, and for which it was not paid.

*Garriguenc v. Love,* 67 Wis.2d 130, 135, 226 N.W.2d 414, 417 (1975) (footnotes omitted). *Accord Vidmar v. American Family Mutual Insurance Co.,* 104 Wis.2d 360, 365, 312 N.W.2d 129, 131 (1981) (plurality opinion); *Racine County National Bank v. Aetna Casualty & Surety Co.,* 56 Wis.2d 830, 837, 203 N.W.2d 145, 149 (1973).

■ In its initial decision, the district court held that the contract unambiguously required the physical presence of the account holder at the time of the relevant withdrawal to obviate the application of the uncollected funds exclusion. We agree with the district court's holding. There is no reasonable construction of the phrase "within the office of the insured at the time" other than that the exception to the exclusion applies only when the account holder is *physically* present in the bank at the time of the withdrawal. Since the plaintiff's customer was not in the bank when the withdrawals occurred, the loss suffered by the plaintiff is excluded from coverage.

Even if the altered language of the exception, upon which the plaintiff based its Rule 60(b) motion, had been in effect, we would not reach a different result. The amended clause replaces the phrase "unless such payments are made to, or withdrawn by, such depositor ... who is within the office of the insured at the time of such payment or withdrawal" with the phrase "unless such payments are physically re-

ceived by such depositor ... who is within the office of the Insured at the time of such payment or withdrawal." We agree with the district court's conclusion that the amendment was not designed to bring check kiting losses under the uncollected funds exclusion for the first time. Most likely, as the plaintiff acknowledged at oral argument, the amendment applies to situations like the one presented in *Clarendon Bank & Trust v. Fidelity and Deposit Co., supra.* In the *Clarendon Bank* case, the court imposed liability under a banker's blanket bond where a bank officer sight posted various deposits while the depositor was present, even though the withdrawals from the account were not actually made until a later date when the depositor was not present at the bank. The court held that the act of sight posting was an irrevocable commitment by the bank to make payments from the depositor's account. The exception to the exclusion applied because the bank made its commitment to pay while the depositor was present. In effect, the court held that the funds were constructively withdrawn at the time of the deposit due to the bank's irrevocable commitment. By now requiring physical receipt of the funds at the time of withdrawal, the amendment to the exception appears to apply to situations such as *Clarendon Bank* presented, as opposed to check kiting cases.

In the typical check kiting case, such as the one present here, the defrauded bank does not make an irrevocable commitment to pay checks drawn on its customer's account. Thus, there is no receipt of the funds, either constructive as in *Clarendon Bank* or physical as the exception now requires, while the customer is within the bank premises. Rather, the bank pays the checks drawn on its customer's account before prior deposits made to the account have had a chance to be returned as uncollectible. The plaintiff here thus paid checks drawn on its customer's account before it discovered that the illusory deposits made to the account were uncollectible. In no sense, however, did the mere act of accepting the deposits while its customer

was present irrevocably commit the plaintiff to allow withdrawals from the account, despite the plaintiff's claim that the bank's standard policy was to credit customer accounts immediately upon deposit.

The bank argues that this policy somehow makes the withdrawal occur at the time of deposit. Therefore, the plaintiff concludes, since its customer was present at the time of deposit, the withdrawal also took place while he was within the bank. We find the plaintiff's argument to be an unwarranted extension of the rationale in *Clarendon Bank.* While the sight posting of deposits in that case created an irrevocable commitment by the bank, here there is no such commitment. The plaintiff concedes that the bank was capable of dishonoring any of the checks. This capability, even if not exercised, precludes us from finding that the plaintiff irrevocably committed itself to making payments. Further distinguishing *Clarendon Bank,* the court there found that the transactions involved did not amount to check kiting because only one bank was involved. In fact, the court characterized the exclusion as a "check kiting" exclusion. 406 F.Supp. at 1171. We agree with the district court that the exclusion absolves insurers from liability from losses due to check kiting, subject to the exception. Furthermore, we hold that the exception applies only when the customer is physically at the bank at the time of withdrawal. Therefore, the district court's initial decision finding no coverage was correct.

■ The plaintiff also claims that the district court erroneously denied the Rule 60(b) motion based upon allegedly newly discovered evidence. A motion to vacate based upon newly discovered evidence is "addressed to the sound discretion of the district court." *Dugan v. United States,* 521 F.2d 231, 233 (5th Cir.1975). Thus, our review is limited to a determination whether the trial judge abused his discretion in denying the motion. *Inryco, Inc. v. Metropolitan Engineering Co.,* 708 F.2d 1225, 1230 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 347, 78 L.Ed.2d 313. As we

have just demonstrated, we agree with the district court that the plaintiff is unable to establish that the new wording of the exception would probably produce a new result, which is one of the requirements of the five-part test for determining the propriety of post-judgment relief based upon newly discovered evidence. *United States v. Walus*, 616 F.2d at 287–88. Additionally, we have some difficulty in discerning the basis for the district court's conclusion that the plaintiff established due diligence, another of the five prerequisites. The record reveals that the plaintiff filed its complaint in January 1982. The plaintiff conceded below that it had signed an updated insurance contract, which included the amended exclusion, in late 1981. The district court stated that "plaintiff's counsel had no reason to believe that a change had been made and no bank officer who had reason to understand its significance was aware of it." 562 F.Supp. at 242. Because a decision on this basis is unnecessary in view of our holding that the plaintiff could not demonstrate that the evidence would probably produce a different result, we need not decide whether a movant can ever obtain relief pursuant to Rule 60(b)(2) for the allegedly new discovery of evidence that has been in its possession. *See, e.g., Pioneer Insurance Co. v. Gelt*, 558 F.2d 1303, 1311–12 (8th Cir.1977); *Glade v. Allied Electric Products, Inc.*, 135 F.2d 590, 591–92 (7th Cir.1943); *Prostrollo v. University of South Dakota*, 63 F.R.D. 9, 11–12 (D.S.D.1974). *See also State Bank v. Capitol Indemnity Co.*, 61 Wis.2d 699, 709, 214 N.W.2d 42, 47 (1974) (bank's ignorance of provisions of insurance policy is unreasonable and is no excuse for failure to comply with those provisions).

We have considered all the other arguments raised by the plaintiff-appellant and find them to be without merit.[1]

The decisions of the district court are AFFIRMED.

---

1. In light of our holding that the insurance policy is unambiguous, we need not address the propriety of the district court's conclusion, *see* 562 F.Supp. at 243, that the rule of strict construction does not apply to banker's blanket bonds because of the joint participation of the American Bankers Association and the Surety Association of America in the drafting of the bond. We note that the insurance industry's claim to this effect has met with substantial judicial skepticism in the past. *See, e.g., First National Bank v. Insurance Co. of North America*, 424 F.2d 312, 316–17 (7th Cir.1970), *cert. denied*, 398 U.S. 939, 90 S.Ct. 1844, 26 L.Ed.2d 272; *First National Bank v. United States Fidelity and Guaranty Co.*, 416 F.2d 52, 56 (5th Cir. 1969).