**ALPINE STATE BANK, an Illinois banking corporation, Plaintiff,**

v.

**The OHIO CASUALTY INSURANCE COMPANY, a corporation, Defendant.**

**No. 88 C 20232.**

United States District Court, N.D. Illinois, W.D.

Jan. 4, 1990.

---

Thomas D. Luchetti, Rockford, Ill., for plaintiff.

Charles A. Gilmartin, Clausen Miller Gorman Caffrey & Witous, P.C., Chicago, Ill., for defendant.

## ORDER

ROSZKOWSKI, District Judge.

This action comes before the court for ruling on cross-motions for summary judgment. For the reasons set forth herein, the court grants Plaintiff's motion for summary judgment and denies Defendant's motion for summary judgment. No dispute as to the facts surrounding this matter exists.

## BACKGROUND

Plaintiff, Alpine State Bank, is a corporation incorporated under the laws of the State of Illinois and has its principal place of business in Rockford, Illinois. Defendant, Ohio Casualty Insurance Company, is a corporation incorporated in the State of Ohio and has its principal place of business in Hamilton, Ohio. Jurisdiction over this action is based upon 28 U.S.C. § 1332.

Defendant issued a financial institution bond covering Plaintiff for the period August 19, 1985 through August 19, 1988. Section (D)(1) of the bond provided that Defendant would cover Plaintiff for any loss resulting directly from forgery. Forgery was defined in Section (1)(h) of the bond as "the signing of the name of another with intent to deceive." Section (B)(1) of the bond provided that Defendant would cover Plaintiff for any "loss of property resulting directly from ... theft, false pretenses, common law or statutory larceny, commited (sic) by a person present in an

office or on the premises of the Insured, while the Property is lodged or deposited within offices or premises located anywhere." Finally, Section 2(*o*) of the bond dealt with exclusion provisions under the bond. This section provided that the bond did *not* cover:

> loss resulting directly or indirectly from payments made or withdrawals from a depositor's account involving items of deposit which are not finally paid for any reason, including but not limited to Forgery or any other fraud, unless such payments or withdrawals are physically received by such depositor or representative of such depositor who is within the office of the insured at the time of such payment or withdrawal, or except when covered under Insuring Agreement (A).

From July 1, 1985 through April of 1986, Plaintiff's customer, William T. Secrest, was the owner of account number 58–070–8. Secrest was employed by Rockford Fluid Power International, Inc. (hereinafter "Rockford") as the vice-president of marketing. Secrest was also a ten percent owner of the corporation. During this time period, Rockford received numerous checks in their course of business and was the designated payee on all of the checks involved here. Secrest endorsed the checks involved in this case by using a rubber stamp which read "for deposit only-account number 58–070–8" and the checks were deposited into Secrest's own personal account. Secrest, in fact, had no authority to deposit these checks into his own account. As a result, Secrest was convicted under 18 U.S.C. § 371 of conspiring to defraud a United States agency. Plaintiff now seeks recovery under the bond from Defendant for the wrongfully deposited checks and the subsequently paid out money.

Defendant denies coverage under the bond for the loss. Defendant argues that Section (D)(1) is not applicable in this case because Plaintiff's loss is not the result of forgery as defined by the bond. Defendant contends that the rubber stamp was not a "signature" endorsement as required by the terms of the bond. Moreover, Defendant contends that Secrest's actions were not forgery in that Secrest did not sign the name of another, but rather stamped his own bank account number on the checks in question. As such, it is Defendant's position that any writing or mark that represents the person who actually executed the writing or mark cannot constitute a forgery. Defendant contends that Secrest's actions constitute a "false assumption of authority" rather than a "forgery."

Defendant further argues that Section (B)(1) is also not applicable in this case. While this section does insure against the loss of property taken through theft or false pretenses, the bond has a $10,000.00 deductible in this regard. Defendant states that its understanding is that the cash received by Secrest on the Plaintiff's premises did not exceed $10,000.00.

Plaintiff argues, on the other hand, that it is entitled to coverage under the bond for the loss sustained because a rubber stamp does constitute a "signature" within the meaning of the bond. Plaintiff cites Webster's Dictionary, the Uniform Commercial Code and common practice for the proposition that a rubber stamp is considered a "signing". Moreover, Plaintiff argues that the fact that the individual endorsing the checks was not the proper payee goes to show that a forgery occurred.

Plaintiff also argues that under Section (B)(1) of the bond, it is entitled to coverage for the loss incurred. Plaintiff contends that Secrest deposited the checks under false pretenses after stealing them from the rightful owner. Accordingly, Section (B)(1) applies and coverage should be extended to Plaintiff.

## DISCUSSION

This court will not grant any summary judgment motion unless all of the pleadings and supporting documents, if any, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Fitzsimmons v. Best*, 528 F.2d 692, 694 (7th Cir.1976). A dispute about a material fact is "genuine" if the evidence is

such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The district court, however, is not required to evaluate every conceivable inference that can be drawn from evidentiary matters, but only reasonable ones. *Parker v. Federal National Mortgage Association*, 741 F.2d 975, 980 (7th Cir.1984).

Contract actions involve State-created rights. When a federal court sitting in diversity deals with State-created rights, the federal court is, "in substance only another court of the State." *Bernhardt v. Polygraphic Company of America*, 350 U.S. 198, 203, 76 S.Ct. 273, 276, 100 L.Ed. 199 (1956). The contract between Alpine State Bank and Ohio Casualty Insurance Company took place in Illinois. Accordingly, Illinois law governs this case. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

■ The first issue the court is called upon to decide is whether the rubber stamp used by Secrest constitutes a signature endorsement within the meaning of the bond. Chapter 26 of Illinois Revised Statutes is the Illinois Commercial Code. Paragraph 3–401(2) defines "signature" as the "use of any name, including any trade or assumed name, upon an instrument, or by any word or mark used in lieu of a written signature." Paragraph 1–201(39) defines "signed" as "any symbol executed or adopted by a party with present intention to authenticate a writing." Finally, the Second District Court of Illinois in *People v. Stephens*, 12 Ill.App.3d 215, 297 N.E.2d 224, 226 (1973), cited Black's Law Dictionary, 4th Ed., p. 1553 in defining signature. The definition reads: "A 'signature' may be written by hand, printed, stamped, typewritten, engraved, photographed or cut from one instrument and attached to another . . . ." With these definitions in mind, the court finds that the rubber stamp used by Secrest on the back of the checks constitutes a signature endorsement. The question then becomes whether the signature endorsement by Secrest constitutes a forgery.

■ In deciding the meaning of forgery as it is used in insurance policies, most courts have looked to the criminal law. Illinois Revised Statutes, chapter 38, paragraph 17–3 defines forgery as follows:

(a) A person commits forgery when, with intent to defraud, he knowingly:

(1) Makes or alters any document apparently capable of defrauding another in such manner that it purports to have been made by another or at another time, or with different provisions, or by authority of one who did not give such authority; or

(2) Issues or delivers such document knowing it to have been thus made or altered; or

(3) Possesses, with intent to issue or deliver, any such document knowing it to have been thus made or altered.

(b) An intent to defraud means an intention to cause another to assume, create, transfer, alter or terminate any right, obligation or power with reference to any person or property.

(c) A document apparently capable of defrauding another includes, but is not limited to, one by which any right, obligation or power with reference to any person or property may be created, transferred, altered or terminated.

The Seventh Circuit Court of Appeals in *Quick Service Box Co. v. St. Paul Mercury Indemnity Co.*, 95 F.2d 15 (1938), stated that in regard to forgery, it does not matter whether the document itself is false and the signature is authentic or the document is authentic and the signature is false. *See, also, Security National Bank of Durand v. Fidelity & Casualty Co.*, 246 F.2d 582 (7th Cir.1957). Rather, the *Quick* court found that "the essence of forgery is an intent to injure or defraud at the time the action complained of is done." 95 F.2d at 17. The *Quick* court did not consider it significant that the endorser in that case had signed his own name. In relation to this, the court stated:

Nor does the fact that when (the endorser) made effective or published the signature of his employer he signed his own name negative the idea of forgery, for, if

the signature is false in any material part and calculated to induce another to give credit to it as genuine, it is truly forgery.

*Id.* (citations omitted). The court went on to state:

> ... it must be borne in mind that forgery is not necessarily confined to the false writing of another's name. It may be committed in other ways. The essence of forgery does not so much consist in counterfeiting as in endeavoring to give appearance of truth to a mere deceit and falsity; and either to impose that upon the world as the solemn act of another which it is not or to make a man's own act appear to have been done at a time when it was not performed and by force of such falsity to give it an operation which in truth and justice it ought not to have. In other words, if the deceit consists in making it appear that a man's own act was done under circumstances which would make it valid and genuine, when in fact it was false and unauthorized the result is the same.

*Id.* (citations omitted). Finally, in *Quick* the court found that an unauthorized signature of an employee "with an intent to defraud was a publication of a false signature and constituted a forgery" of a signature within the terms and provisions of the bond.

■ This court believes that the present case falls within the *Quick* court's decision. This court agrees with the *Quick* court holdings and finds that in defining the meaning of forgery, the signing of one's own signature can constitute a forgery in certain circumstances. In this case, Secrest had no authority to endorse the checks made out to Rockford Fluid Power International Inc. When Secrest stamped the checks "for deposit only" into his own account, Secrest gave apparent probity to a fraudulent act. Secrest's intent was to procure payment of the checks by means of a fraudulent signature completed by Secrest himself, rather than the signature of an authorized person. Secrest, therefore, had the requisite intent at the time of his actions to fall within the meaning of forgery as set out by the *Quick* court.

The court further believes that this result is correct in light of the Illinois Criminal Code defining "forgery." Secrest has, in effect, altered a document capable of defrauding another in such a manner that it purports to have been made with different provisions. Secrest put his stamp to checks made out to Rockford Fluid Power International, Inc. in order to endorse the checks and deposit them into his own private account. The rubber stamp endorsement is, in effect, an alteration of the checks as the checks did not originally bear such an endorsement. Furthermore, the purpose of the rubber stamp endorsement was to defraud Plaintiff into believing that Secrest was the true owner of the checks. Finally, Secrest, by stamping the back of the checks, changed the payee from Rockford Fluid Power International, Inc. to himself, thereby giving the checks different provisions. Secrest had no authority to perform any of these acts. Also in line with Illinois statutory authority, Secrest delivered the checks, knowing them to have been so altered, to the Alpine State Bank.

As a final matter, the court does not believe that the terms used by the bond in defining fraud change the result in this case. As stated earlier, Section (1)(h) of the bond defines forgery as "the signing of the name of another with intent to deceive." The rubber stamp constitutes a signature. While Secrest did not sign the actual name of another in endorsing the checks, in practicality he did so. By stamping the checks "for deposit only", Secrest endorsed the checks leading Alpine State Bank to believe this was the stamp of Rockford Fluid Power International, Inc., the payee of the checks. The fact that the rubber stamp stated "for deposit only, account no. 58–070–8" rather than an actual signature has no bearing on the outcome of this decision.

## CONCLUSION

For the reasons set forth herein, Plaintiff's motion for summary judgment is

granted and Defendant's motion for summary judgment is denied.