941 F.2d 554
 21 Fed.R.Serv.3d 611
 ALPINE STATE BANK, an Illinois banking corporation,
Plaintiff-Appellee-Cross-Appellant,
v.
OHIO CASUALTY INSURANCE COMPANY, a corporation,
Defendant-Appellant-Cross-Appellee.
 Nos. 90-1561, 90-1802.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 7, 1991.
Decided Aug. 23, 1991.
 
 Thomas D. Luchetti, James F. Black (argued), Rockford, Ill., for plaintiff-appellee.
 James T. Ferrini, Charles A. Gilmartin, Cherie R. Galarnyk, Mark J. Seplak (argued), Clausen, Miller, Gorman, Caffrey & Witous, Chicago, Ill., for defendant-appellant.
 Before FLAUM, RIPPLE, and KANNE, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 A bank was sued for permitting a customer wrongfully to deposit misappropriated checks into his personal account. The bank filed a declaratory judgment action seeking the district court's determination of its rights under a bond issued by its insurance company to cover potential loss as a result of the wrongful deposits. The bank and the insurance company filed cross-motions for summary judgment. The court granted the bank's motion. The insurance company now appeals. For the following reasons, we reverse the judgment of the district court.
 
 
 2
 * BACKGROUND
 
 A. Facts
 
 3
 Ohio Casualty Insurance Company (OCIC) issued a financial institution bond covering Alpine State Bank (the Bank) from August 19, 1985 to August 19, 1988. The bond insured the Bank against any loss resulting directly from forgery of any negotiable instrument. Forgery is defined in the bond as "the signing of the name of another with intent to deceive; it does not include the signing of one's own name with or without authority, in any capacity, for any purpose." R. 1 Ex. A. The bond also insured the Bank against loss resulting directly from "theft, false pretenses, common law or statutory larceny, committed by a person present in an office or on the premises of the Insured, while the Property is lodged or deposited within offices or premises located anywhere." Id. From July 1985 through April 1986, William Secrest, a customer of the Bank and owner of account number 58-070-8, misappropriated more than $100,000 in checks that had been drawn to the order of his employer, Rockford Fluid Power International, Inc. (Rockford).[1] Secrest accomplished this by endorsing the checks with a rubber stamp that read "for deposit only--account number 58-070-8." The checks then were deposited into his personal account at the Bank. Eventually, Secrest was caught and convicted of conspiring to defraud a United States agency.
 
 
 4
 Sometime during these events, Rockford filed for bankruptcy under Chapter 7 of the Bankruptcy Code. Rockford's trustee in bankruptcy filed an adversarial proceeding against the Bank in bankruptcy court alleging that the Bank was liable to Rockford's estate for the amount of the checks. Thereafter, the Bank made a claim against the bond, which OCIC denied. The Bank then filed a declaratory judgment action seeking the district court's determination of the parties' rights under the bond. Both parties filed motions for summary judgment, and the court granted the Bank's. OCIC now appeals.[2]
 
 B. District Court's Opinion
 
 5
 The district court determined that Illinois law governed this case. See Alpine State Bank v. Ohio Cas. Ins. Co., 733 F.Supp. 60, 63 (N.D.Ill.1990). Relying on the definitions of "signature" contained in both the Illinois Uniform Commercial Code and an Illinois appellate case, People v. Stephens, 12 Ill.App.3d 215, 297 N.E.2d 224, 226 (1973), the court reasoned that the Bank was covered by the bond because the rubber stamp "constitutes a signature endorsement within the meaning of the bond." 733 F.Supp. at 63. Moreover, the court held that Secrest's stamping the back of the checks was forgery within the meaning of the bond. It relied on the definition of forgery in the Illinois criminal code and believed that the case was governed by this court's decision in Quick Service Box Co. v. St. Paul Mercury Indem. Co., 95 F.2d 15 (7th Cir.1938). The Quick Service court held that "an unauthorized signature of an employee 'with an intent to defraud was a publication of a false signature and constituted a forgery' of a signature within the terms and provisions of the bond." 733 F.Supp. at 64 (quoting Quick Service, 95 F.2d at 17). The district court concluded by stating that it did not believe "the terms used by the bond in defining fraud change the result in this case" because "[w]hile Secrest did not sign the actual name of another in endorsing the checks, in practicality he did so." Id.
 
 II
 ANALYSIS
 A. Final Judgment
 
 6
 Although neither party has raised the issue, we must determine, as a threshold matter, whether the district court has entered a final, appealable order sufficient to confer jurisdiction upon this court. See Goodyear Atomic Corp. v. Miller, 486 U.S. 174, 178, 108 S.Ct. 1704, 1708, 100 L.Ed.2d 158 (1988); Horn v. Transcon Lines, Inc., 898 F.2d 589, 591 (7th Cir.1990). The requirement of finality is a statutory mandate, not a rule of discretion. See 28 U.S.C. § 1291. During the progress of this case, the district court's magistrate held numerous status hearings. These hearings routinely were continued for approximately sixty days. At a December 8, 1989 status hearing, the magistrate set the next meeting for February 9, 1990. Thereafter, on January 8, 1990, the district court granted the Bank's motion for summary judgment. In doing so, the court issued a memorandum opinion, a "minute order," and a form prescribed for judgment in a civil case. None of these documents canceled the February 9, 1990 status hearing. On February 9, 1990, counsel for OCIC learned that the status hearing had been canceled and the case file closed. Counsel for OCIC then filed a motion to vacate the district court's January 8, 1990 order and specifically to declare the rights of the parties as required in a declaratory judgment action. The district court denied the motion, stating that its order was final.
 
 
 7
 As we discussed, this is a declaratory judgment action; the complaint contains essentially no other requested relief. The district court generated three documents in disposing this action: (1) the memorandum opinion granting the Bank's summary judgment motion and denying OCIC's;[3] (2) the minute order accompanying the opinion;[4] and (3) a form prescribed for "judgment in a civil case."[5] None of these documents actually declares the rights of the parties. The district court should have done so. Rule 58 of the Federal Rules of Civil Procedure instructs that "[e]very judgment shall be set forth on a separate document." In the context of a declaratory judgment action, we have commented that "Rule 58 ... says that the judgment must appear on a separate piece of paper--separate, that is, from the court's opinion. We take this requirement seriously." Azeez v. Fairman, 795 F.2d 1296, 1297 (7th Cir.1986).[6] In satisfying the requirement of Rule 58, neither the memorandum opinion explaining the ruling on summary judgment, nor the minute order announcing the summary judgment can be substituted for a declaratory judgment. See Horn v. Transcon Lines, Inc., 898 F.2d 589, 591 (7th Cir.1990) ("An opinion is not a sufficient substitute for a judgement.... An opinion explains the reasons for entering a judgment but is not itself a source of legal obligations."); American Interinsurance Exch. v. Occidental Fire & Cas. Co., 835 F.2d 157, 159 (7th Cir.1987) (both opinion and form prescribed for judgment in a civil case that granted and denied summary judgment not appealable because the "judgment must be self-contained and complete"); Foremost Sales Promotions, Inc. v. Director, Bureau of Alcohol, Tobacco & Firearms, 812 F.2d 1044, 1045 (7th Cir.1987) (minute order not appealable because it "refers to the opinion for 'particulars', but a final judgment should contain the whole disposition (though not the reasoning behind it)"); Azeez v. Fairman, 795 F.2d 1296, 1297 (7th Cir.1986) (opinion granting relief in favor of party without separate document declaring rights of parties not appealable).[7]
 
 
 8
 The rule articulated in Azeez and its progeny continues to be firmly planted in this circuit. Pursuant to Rule 58, in declaratory judgment actions, district courts must declare specifically and separately the respective rights of the parties, not simply state in a memorandum opinion, minute order, or a form prescribed for judgment in a civil case that a motion has been granted or denied. "Under [Rule] 58 the judgment must be self-contained and complete. It must describe the relief to which the prevailing party is entitled and not simply record that a motion has been granted." American Interinsurance, 835 F.2d at 159. And we shall not hesitate to hold that we lack jurisdiction if the judgment ambiguously declares the rights of the parties or is unclear or calls into serious question the matter of finality.
 
 
 9
 In making such jurisdictional determinations, the Supreme Court approvingly has noted Judge Posner's comment that " 'law is an instrument of governance rather than a hymn to intellectual beauty, some consideration must be given to practicalities.' " Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 837, 109 S.Ct. 2218, 2225, 104 L.Ed.2d 893 (1989) (quoting Newman-Green, Inc. v. Alfonzo-Larrain R., 854 F.2d 916, 925 (7th Cir.1988)). Although in the present case the district court technically did not enter a declaration of the parties' rights, "the practicalities weigh heavily," Id. 109 S.Ct. at 2225, toward a common sense conclusion that the district court intended to enter a final judgment. The present case, therefore, is unlike Horn, American Interinsurance, Foremost, and Azeez. In those cases, the court contemplated further proceedings (or it was unclear whether the court believed the case was over), or it was unclear what relief the court granted. Here, by contrast, OCIC moved to vacate the order and requested the district court specifically to declare the rights of the parties. The court denied the motion, and OCIC was informed that the court considered the case closed and considered its memorandum opinion sufficiently definitive. By these acts, the court evinced an unambiguous intent to render a final judgment.[8] Moreover, the parties cannot dispute seriously that the rights and liabilities of the parties were determined unambiguously in the district court's opinion. Therefore, while the district court should have done more, when we give consideration to the practicalities of this case, we must conclude that we have jurisdiction.
 
 B. Bond Coverage
 1. Forgery
 
 10
 This case essentially involves the construction of an insurance policy or bond. The conduct by Secrest giving rise to the claim for coverage under the bond is not disputed. In such a situation, "[t]he construction of an insurance policy, or the interpretation of a bankers blanket bond, is a question of law to be determined by a court." First Nat'l Bank Co. v. Insurance Co. of N. Am., 606 F.2d 760, 768 (7th Cir.1979).[9] Therefore, we review the district court's interpretation and construction of the bond de novo. See Insurance Corp. of Ireland v. Board of Trustees of S. Illinois Univ., 937 F.2d 331, 335-36 (7th Cir.1991); Sodowski v. National Flood Ins. Program of Fed. Emergency Mgt. Agency, 834 F.2d 653, 655 (7th Cir.1987), cert. denied, 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 619 (1988). Here, the bond language is clear on its face; indeed, the district court's opinion does not mention any ambiguity in the bond. Therefore, we believe the plain language of the bond itself controls the scope of coverage afforded by the bond. "Under Illinois law, an insurance policy that contains no ambiguity is to be construed according to the plain and ordinary meaning of its terms, just as would any other contract." National Fidelity Life Ins. Co. v. Karaganis, 811 F.2d 357, 361 (7th Cir.1987); see Citicorp Savs. of Illinois v. Stewart Title Guar. Co., 840 F.2d 526, 529 (7th Cir.1988).
 
 The bond defines forgery:
 
 11
 Forgery means the signing of the name of another with intent to deceive; it does not include the signing of one's own name with or without authority, in any capacity, for any purpose.
 
 
 12
 R. 1 Ex. A. Secrest's endorsing the misappropriated checks by rubber stamping "for deposit only--account number 58-070-8" did not constitute forgery within the meaning of the bond because Secrest did not sign the name of another. And, because the bond contained no ambiguities, the district court erred when it went beyond the definition contained in the bond and resorted to defining signature and forgery through extrinsic definitions. See Filip v. North River Ins. Co., 201 Ill.App.3d 351, 147 Ill.Dec. 17, 559 N.E.2d 17, 18 (1990) ("It is well accepted that ... definitions contained within the Policy are controlling. This is particularly true when an insurance policy defines terms in a manner which differs from the ordinary understanding of the terms.").[10] Moreover, were we somehow to find that the rubber stamp endorsement was the signature of another, we would have to do so, as the Bank suggests, by incorporating the deposit slips, which contained the name Rockford. However, Secrest's own name preceded the Rockford name on the deposit slips. The definition of forgery in the bond specifically excludes the signing of one's own name for any purpose. Therefore, even if we were to interpret the rubber stamp endorsement as a signature, it identifies Secrest and is excluded from the definition of forgery under the bond.
 
 2. On-premises loss
 
 13
 The Bank argued before the district court that coverage was afforded under section (B)(1)(b), the "on-premises" liability section of the bond. The district court noted that "[w]hile this section does insure against the loss of property taken through theft or false pretense, the bond has a $10,000 deductible in this regard. Defendant states that its understanding is that the cash received by Secrest on the plaintiff's premises did not exceed $10,000." 733 F.Supp. at 62. It did not further construe the provision--apparently because it already had found the insurance company liable under the policy terms already discussed. On appeal, the Bank proffers a constructive receipt argument. It asserts that once Secrest "received a credit on his account balance a loss occurred. At that point Secrest had control of the funds." Appellee's Br. at 18. Implicit within this argument is that the amount received would then exceed the $10,000 deductible.
 
 
 14
 Section (B)(1)(b) protects against property loss resulting from theft, false pretense, or larceny committed by a person in the Bank's office or on its premises. The bond defines "property" as "money" and "negotiable instruments," in addition to other forms of tangible property not relevant here. R. 1 Ex. A. Because Secrest stole the checks (negotiable instruments) from Rockford's offices, no on-premises loss of negotiable instruments resulted. Moreover, contrary to the Bank's contention, the money (defined as "currency" in the bond) that Secrest received on the Bank's premises did not exceed $10,000. In Bradley Bank v. Hartford Accident & Indemnity Co., 737 F.2d 657, 661 (7th Cir.1984), we held that "[i]n no sense ... did the mere act of accepting the deposits while [the bank's] customer was present irrevocably commit the [bank] to allow withdrawals from the account," even when "the bank's standard policy was to credit customer accounts immediately upon deposit." Likewise, the Bank's deposit of the misappropriated checks was not tantamount to Secrest's receiving currency or money.[11] Hence, no property in excess of $10,000 was taken by Secrest while on the Bank's premises.
 
 
 15
 In any event, "Exclusion O" under the bond forecloses OCIC's liability. Exclusion O excludes coverage under the bond for
 
 
 16
 loss resulting directly or indirectly from payments made or withdrawals from a depositor's account involving erroneous credits to such account, unless such payments or withdrawals are physically received by such depositor or representative of such depositor who is within the office of the insured at the time of such payment or withdrawal ....
 
 
 17
 R. 1 Ex. A. (emphasis supplied). In Bradley Bank, we construed a virtually identical exclusion and required "the account holder [to be] physically present in the bank at the time of the withdrawal." 737 F.2d at 660 (emphasis in original).[12] As we have already discussed, any withdrawals made by Secrest while physically present in the Bank did not exceed the $10,000 deductible. Therefore, the Bank cannot find coverage under the bond's on-premises-loss provision.
 
 Conclusion
 
 18
 For the foregoing reasons, the judgment of the district court is reversed.
 
 
 19
 REVERSED.
 
 
 
 [1]
 Secrest also owned 10% of Rockford and was its vice-president of marketing
 
 
 [2]
 The Bank also has filed a cross-appeal (No. 90-1802), which we consolidated with OCIC's appeal (No. 90-1561). The Bank's appeal arises from OCIC's motion for an extension of time to file its appeal with this court. OCIC argued that it misperceived the finality of the district court's order because the court never declared the rights of the parties as required by Seventh Circuit precedent and because a status hearing between the parties remained on the court's calendar after the court entered its order. The district court's emergency judge heard the motion in the absence of the district court judge who tried the case. The emergency judge granted OCIC's motion because of "excusable neglect" under Federal Rule of Appellate Procedure 4(a)(5). The Bank contends that the emergency judge abused her discretion in finding excusable neglect. The Bank argues that both parties moved for summary judgment and the district court granted summary judgment in the Bank's favor. The district court's order, according to the Bank, was complete and final and if, OCIC was confused, it should have requested the court to clarify its decision within 30 days of the entry of judgment
 The district court enjoys "wide latitude" in determining excusable neglect. Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat (Admin. of State Ins.), 808 F.2d 1249, 1251 (7th Cir.1987). We shall not reverse a court's finding of excusable neglect unless "there has been a clear abuse of discretion." Id. There was no abuse of discretion here. The district court had not followed the usual procedure in its order when a declaratory judgment action is before a court. In accordance with Federal Rule of Civil Procedure 58, we have held that, in a declaratory judgment action, "[t]he district judge must select the language of the declaratory judgment and issue the order; the court may not stop with the opinion." Foremost Sales Promotions, Inc. v. Director, Bureau of Alcohol, Tobacco & Firearms, 812 F.2d 1044, 1045 (7th Cir.1987); see American Interinsurance Exch. v. Occidental Fire & Cas. Co., 835 F.2d 157, 159 (7th Cir.1987). Essentially, the only relief requested by the Bank in its complaint was a declaration of the parties' rights pursuant to coverage under the bond. The district court never made that declaration as required by Rule 58. Therefore, we believe that the emergency judge did not err in ruling that OCIC's reliance on the district court's failure to enter a specific declaratory judgment was excusable neglect. The district court's failure properly to enter a judgment pursuant to Rule 58 raises a serious jurisdictional issue as to whether the court entered a final judgment. We discuss this issue in the text infra.
 
 
 [3]
 See Alpine State Bank v. Ohio Cas. Ins. Co., 733 F.Supp. 60 (N.D.Ill.1990)
 
 
 [4]
 The minute order form states: "Plaintiff's motion for summary judgment is granted. Defendant's motion for summary judgment is denied." The form also refers to the attached order (the memorandum opinion) for further details
 
 
 [5]
 The form states: "IT IS ORDERED AND ADJUDGED: that Plaintiff's Motion for Summary Judgment is granted."
 
 
 [6]
 Accord Foremost Sales Promotions, Inc. v. Director, Bureau of Alcohol, Tobacco & Firearms, 812 F.2d 1044, 1045 (7th Cir.1987) ("The district court must select the language of the declaratory judgment and issue the order; the court may not stop with the opinion.")
 
 
 [7]
 See also Reytblatt v. Denton, 812 F.2d 1042, 1043 (7th Cir.1987) (purported dismissal of case on form prescribed for judgment in a civil case failing to indicate both the ruling and the disposition not appealable); Rappaport v. United States, 557 F.2d 605, 606 (7th Cir.1977) (minute order granting motion for summary judgment but not explicitly declaring the case over not appealable). See generally Eakin v. Continental Illinois Nat'l Bank & Trust Co., 875 F.2d 114, 118 (7th Cir.1989) ("Judicial opinions do not create obligations; judgments do. In the event of a conflict between the opinion and the judgment, the judgment controls.")
 
 
 [8]
 Cf. Gerritsen v. De la Madrid Hurtado, 819 F.2d 1511, 1514 (9th Cir.1987) (" 'If it appears that the district court intended the dismissal to dispose of the action, it may be considered final and appealable.' ") (quoting Hoohuli v. Ariyoshi, 741 F.2d 1169, 1171 n. 1 (9th Cir.1984))
 
 
 [9]
 Accord Atlas Pallet, Inc. v. Gallagher, 725 F.2d 131, 134 (1st Cir.1984) ("Generally, where the facts upon which liability is claimed or denied under an insurance policy are undisputed and the existence or amount of liability depends solely upon a construction of the policy, the question presented is one of law for the court to decide.")
 
 
 [10]
 Accord Chapman & Cole v. Itel Container Int'l B.V., 865 F.2d 676, 681-82 (5th Cir.) (court correctly disregarded industry usage of term when it was expressly defined in policy), cert. denied, --- U.S. ----, 110 S.Ct. 201, 107 L.Ed.2d 155 (1989); Enterprise Tools, Inc. v. Export-Import Bank, 799 F.2d 437, 439 (8th Cir.1986) ("resort to extrinsic evidence is appropriate only to resolve ambiguities" and "where a term is defined in the policy, the court is bound by the policy definition"), cert. denied, 480 U.S. 931, 107 S.Ct. 1569, 94 L.Ed.2d 761 (1987); Webb v. Voirol, 773 F.2d 208, 212 (8th Cir.1985) ("unambiguous language in an insurance contract must be given its plain meaning, ... resort to judicial construction is had only when an ambiguity exists"); Michigan Chem. Corp. v. American Home Assurance Co., 728 F.2d 374, 377 (6th Cir.1984) (when plain and unambiguous contract terms expressed, "language must be given its ordinary and common meaning without further construction"); Pearce v. General Am. Life Ins. Co., 637 F.2d 536, 539 (8th Cir.1980) ("As a general rule, plain and unambiguous language will be given its ordinary meaning and effect; the need to resort to construction arises only when an ambiguity exists.... But where a term is defined in the policy, the court must look to there and nowhere else...."); General Accident Fire & Life Assurance Corp. v. Akzona Inc., 622 F.2d 90, 93 (4th Cir.1980) ("When an insurance policy defines a term, that definition provides 'the meaning which must be given to that term ... unless the context clearly requires otherwise.' ") (quoting Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 172 S.E.2d 518, 522 (N.C.1970)); State Farm Fire & Cas. Co. v. Hiermer, 720 F.Supp. 1310, 1314 (S.D.Ohio 1988) ("Courts may not rewrite, through rules of construction, the unambiguous terms of an insurance contract."), aff'd, 884 F.2d 580 (6th Cir.1989); Wolf Bros. Oil Co. v. International Surplus Lines Ins. Co., 718 F.Supp. 839, 841 (W.D.Wash.1989) (when contract language unambiguous, it must be enforced as written; if language is ambiguous, court may admit extrinsic evidence); Halpern v. Lexington Ins. Co., 558 F.Supp. 1280, 1282 (E.D.La.1983) (generally court should consider only the language of the contract itself, using parol evidence when language is ambiguous), aff'd, 715 F.2d 191 (5th Cir.1983); see also Capitol Bank of Chicago v. Fidelity & Cas. Co., 414 F.2d 986, 988 (7th Cir.1969) (conduct alleged was forgery in a criminal sense, but no coverage under bond because bond terms limited coverage to forgery as to signature and document was properly signed); Gateway State Bank v. North River Ins. Co., 387 N.W.2d 344, 348 (Iowa 1986) (when forgery defined in bond, resort to common law definition inappropriate); Hall v. Gamble Alden Life Ins. Co., 34 Ill.App.3d 837, 341 N.E.2d 69, 71 (1975) (when "policy unambiguously defined 'automobile' in terms of manufacture's primary design, evidence of the general and common usage and of the insured's use of a pick-up truck is immaterial")
 We note that the district court's reliance on our decision in Quick Service Box Co. v. St. Paul Mercury Indemnity Co., 95 F.2d 15 (7th Cir.1938), is misplaced. Although we found coverage under the forgery provision of the bond at issue, that bond did not contain a definition of forgery. Therefore, Quick Service is readily distinguishable from the present case.
 
 
 [11]
 See Mitsui Mfrs. Bank v. Federal Ins. Co., 795 F.2d 827, 832 (9th Cir.1986) ("[A]ccepting deposited items and immediately crediting them to an account does not constitute constructive payment.")
 
 
 [12]
 Accord Mitsui Mfrs. Bank v. Federal Ins. Co., 795 F.2d 827, 831 (9th Cir.1986)