**LUSITANIA SAVINGS BANK, FSB, Plaintiff,**

v.

**PROGRESSIVE CASUALTY INSURANCE COMPANY, Defendant.**

**No. CIV.A. 03–2902(WHW).**

United States District Court, D. New Jersey.

July 30, 2004.

William D. Wallach, McCarter & English, Esqs., Newark, NJ, for Plaintiff.

Anthony Sylvester, Harold L. Kofman, Riker, Danzig, Scherer, Hyland & Perretti, LLP, Morristown, NJ, for Defendant.

## OPINION

WIGENTON, United States Magistrate Judge.

Before the Court are Defendant's and Plaintiff's motions for summary judgment. The Court decides the motions upon the parties' written submissions and oral argument heard on July 28, 2004. For the reasons set forth below, Defendant's motion is granted and Plaintiff's motion is denied.

## BACKGROUND

*History*

Plaintiff Lusitania Savings Bank, FSB, ("Lusitania" or "Plaintiff") is a federally chartered bank with its principal place of business in Newark, New Jersey. *Compl* ¶ 1. Defendant Progressive Casualty Insurance Company ("Progressive" or "Defendant") is an Ohio corporation with its principal place of business in Ohio. *Id.; Notice of Removal* ¶ 3.

On June 22, 1998, Theresa Leuzzi ("Leuzzi") opened a checking account and savings account at Lusitania's Newark branch on behalf of T.C.S. America ("TCS New Jersey"). *Lusitania's Local Rule 56.1 Statement* ¶ 1 ("Lusitania's Statement"). In opening the accounts, Leuzzi presented a business name certificate for TCS New Jersey, which had an address in Kearny, New Jersey. *Id.* ¶ 2. Leuzzi also provided a copy of her passport and Certificate of Naturalization. *Id.* On the same day, Leuzzi deposited a check made out to "TCS America" in the amount of $198,124.00 ("Check") issued by Nike, Inc. ("Nike"). *Progressive's Local Rule 56.1 Statement* ¶ 16 ("Progressive's Statement"). On subsequent visits to the Bank, Leuzzi issued $59,801.00 checks from the Lusitania account. *Id.* ¶ 22. Leuzzi also issued checks for the remaining amount in the account while not present at the bank. *Id.* ¶ 23.

Nike issued the Check on its checking account at Wachovia Bank ("Wachovia"). *Compl* ¶ 7. However, the actual payee of the Check was TCS America located in New York city ("TCS New York"), which is a totally different entity from TCS New

Jersey. *Progressive's Statement* ¶ 25. When TCS New York did not receive payment for consulting services it provided to Nike, TCS New York notified Nike of that fact, which in turn led Nike to investigate the matter with Wachovia. *Id.* ¶ 26. Responding to Nike's demand for reimbursement for the Check, Wachovia reimbursed Nike for the face amount of the Check, $198,124.00. *Id.* ¶¶ 27–28.

Subsequently, Wachovia brought an action against the Federal Reserve Bank of Richmond for breach of warranty in the United States District Court in the Western District of North Carolina ("Wachovia Litigation") *Compl.* ¶ 3.[1] Upon receiving service of the summons and complaint, the Federal Reserve Bank of Richmond tendered defense of the action to the Federal Reserve Bank of New York pursuant to § 210.5(b) of Regulation J of the Code of Federal Regulations.[2] *Compl.* ¶ 4. The Federal Reserve Bank of New York, in turn, tendered defense of the action to Lusitania given its role as the depository bank. *Id.* ¶ 5. In accordance with the applicable regulations and statutes governing the relationship, Lusitania assumed the defense in the Wachovia Litigation and agreed to indemnify the Federal Reserve Bank of New York for any losses sustained in the lawsuit. *Id.* ¶ 6.

In or about October of 2002, Wachovia and Lusitania reached a settlement of their claims before the trial, resulting in mutual releases of all claims and the dismissal of the Wachovia Litigation. *Compl.* ¶ 12. As part of its indemnification obligation, Lusitania agreed to pay to Wacho-

---

**1.** *Wachovia Bank, National Association v. Federal Reserve Bank of Richmond,* Case No. 3:01–CV–443–C.

**2.** § 210.5(b) states: "If an action or proceeding is brought against (or if defense is tendered to) a Reserve Bank that has handled an item, ... the Reserve Bank may ... recover from the sender the amount of attorneys' fees and other expenses of litigation incurred, as well as any amount the Reserve Bank is required to pay because of the judgment or decree or the tender of defense, together with interest thereon." 12 CFR 210.5.

via the face value of the Check, $198,124.00. *Progressive Statement* ¶ 32.

Lusitania subsequently demanded coverage under a financial institution bond ("Bond") from Progressive for the amount it paid to Wachovia, as well as attorney's fees and costs incurred in the Wachovia litigation. Progressive agreed to provide coverage to Lusitania under Insuring Agreement B of the Bond for the $59,801.00 that Leuzzi had drawn on her accounts while physically present at the bank. *Progressive's Statement* ¶ 33. Because of the $25,000.00 deductible set forth in the Bond, Progressive has paid Lusitania $34,801.00. *Id.* ¶ 34. However, Progressive declined to cover the rest of the amount arguing that the Bond does not provide coverage for the amount withdrawn by Leuzzi while she was not on the premises of the bank, nor does it provide coverage for the litigation fees and costs. Subsequently, Lusitania commenced this litigation.

*The Check*

The front of the Check has the name and address of the payor, Nike, and the amount "One Hundred Ninety–Eight Thousand One Hundred Twenty–Four Dollars And 00 Cents." It also states that the check is to the order of "TCS AMERICA 101 PARK AVENUE, 26TH FLOOR, NEW YORK, N.Y. 10178." On its back, the Check has the following:

> Deposit Only TCS
>
> [Leuzzi's signature]
>
> 010015743
>
> 014015744

Defendant contends that it is Leuzzi's signature since they are identical to the one on the signature card that Leuzzi signed to open the accounts at Lusitania. *Progressive Statement* ¶ 19. Defendant also claims that the signature amounts to Leuzzi's endorsement of the Check. *Progressive Statement* ¶ 19. Plaintiff does not dispute that the signature is Leuzzi's. However, it contends that the only endorsement on the check is "Deposit Only TCS" and Leuzzi's signature was included pursuant to Lusitania's policy which requires a person who places an endorsement on a check to sign the check for identification purposes only. *Lusitania Statement* ¶ 7.

*The Bond*

Lusitania purchased the Bond from Progressive, which has the bond period from September 1, 1996 to September 1, 1999.[3] The Bond states;

> The Underwriter [Progressive], in consideration of an agreed premium, and in reliance upon all statements made and information furnished to the Underwriter by the Insured [Lusitania] in applying for this bond, and subject to the Declarations, Insuring Agreements, General Agreements, Conditions and Limitations and other terms hereof, agrees to indemnify the Insured for:
>
> . . . . .
>
> (D) Loss resulting directly from
>
> (1) Forgery or alteration of, on or in any Negotiable Instrument (except an Evidence of Debt), Acceptance, Withdrawal Order, receipt for the withdrawal of Property, Certificate of Deposit or Letter of Credit.

*Certification of Sandra Teixeira* ("Teixeira Certification") Ex. G. The Bond defines forgery as:

---

**3.** Financial institution bonds, often known as "bankers' blanket bonds" or "fidelity bonds," insure a depository institution against losses caused by embezzlement or embezzlement-like acts such as forgery or theft. John F. Olson, Josiah O. Hatch, Ty R. Sagalow, *Director & Officer Liability: Indemnification and Insurance* § 6:8 (2003).

the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

*Id.*

The Bond also has a rider ("Rider") under which Progressive promises to indemnify Lusitania's litigation costs and reasonable attorneys' fees. The Rider states:

Sums incurred and paid by the Insured as court costs and reasonable attorneys' fees in defending any suit or proceeding brought against the Insured to enforce the liability or alleged liability of the Insured for any loss, claim or damage which, if established against the Insured, would constitute a valid and collectible loss under this bond.

*Id.* The Rider also contains the following exceptions:

This coverage is applicable with reference to all Coverages for which a limit of liability is stated or endorsed to the Policy, except Coverages: Claims Expense, Extortion, Data Processing Transit and Extra Expense, Cash Letters, Loss of Records, *Forgery,* and Directors and Officers Expenses in Defending Suits.

*Id.* (emphasis added).

### STANDARD OF REVIEW

*Fed.R.Civ.P.* 56(c) provides that summary judgment should be granted "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R.Civ.P.* 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Kreschollek*

*v. Southern Stevedoring Co.,* 223 F.3d 202, 204 (3d Cir.2000). In deciding a motion for summary judgment, a Court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Allegheny Pennsylvania,* 139 F.3d 386, 393 (3d Cir.1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Supreme Court has stated that in evaluating a defendant's motion for summary judgment, "[t]he judge must ask ... not whether ...the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of evidence that the plaintiff is entitled to a verdict..." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. A fact is "material" only if it will affect the outcome of a lawsuit under the applicable law, and a dispute over a material fact is "genuine" if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *See id.*

In order to survive a motion for summary judgment, a plaintiff must present more than a mere scintilla of evidence in his favor. *Id.* He "cannot simply reallege factually unsupported allegations contained in his pleadings." *Id.* at 249, 106 S.Ct. 2505; *see also Clark v. Clabaugh,* 20 F.3d 1290, 1294 (3d Cir.1994). Only evidence that would be admissible at trial may be used to test a summary judgment motion; evidence with a deficient founda-

tion must be excluded from consideration. *See Blackburn v. United Parcel Service, Inc.,* 179 F.3d 81 (3d Cir.1999).

## DISCUSSION

### 1. Coverage under Forgery Provision

 The parties agree that the substantive law of New Jersey applies to resolve the dispute in this diversity case. In New Jersey, when a contract is clear, courts are bound to enforce the contract as they find it. *See James v. Federal Insurance Company,* 5 N.J. 21, 24–25, 73 A.2d 720 (1950)("The law will not make a better contract for parties than they themselves have seen fit to enter into, or alter it for the benefit of one party and to the detriment of the other"). In the absence of an ambiguity in the language of an insurance policy, a court should not engage in a strained construction to support the imposition of liability. *See Progressive Casualty Insurance Company v. Hurley,* 166 N.J. 260, 273, 765 A.2d 195 (2001). However, "[w]here the policy language [of an insurance policy] supports two meanings, one favorable to the insurer and the other to the insured, the interpretation favoring coverage should be applied." *Id.* (citing *Lundy v. Aetna Casualty & Surety Company,* 92 N.J. 550, 559, 458 A.2d 106 (1983)).

The main issue in the instant case is whether Leuzzi's signature amounts to "forgery" under the definition in the Bond. As stated above, forgery is defined in the Bond as: ·

> the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

*Teixeira Certification* Ex. G. It is clear from the facts presented by both parties that Leuzzi put "Deposit Only TCS" on the back of the Check pretending that she represented TCS New York. Furthermore, Leuzzi's signature also appears on the back of the Check below "TCS."

Neither the courts in this Circuit nor New Jersey state courts have dealt with the same clause in a financial institution bond as the one found in the present case. However, courts in other Circuits have dealt with the exact or essentially the same language as the one at issue here. For example, in *Reliance Insurance Company v. First Liberty Bank,* 927 F.Supp. 448 (M.D.Ga.1996), Judge Owens analyzed exactly the same clause in a fidelity bond as this Court faces in the present case. In *Reliance,* Reliance Insurance Company ("Reliance") sent a check to the attorney, Ernest J. Yates ("Yates") of the insured, Knight's Furniture Company ("Knight") for a fire loss suffered at a company store. *Id.* at 449. The check was made payable to "Knight's Furniture Company Inc. & Ernest J. Yates, Its Attorney." *Id.* Yates endorsed the draft on the back: "Knight's Furniture Company, Inc. By Ernest J. Yates, its attorney AND Ernest J. Yates" and presented to Tifton Bank & Trust Company ("Tifton"). *Id.* Tifton accepted the check and Yates deposited the proceed into his firm's trust account. *Id.* Knight later received only a small portion of the proceed from Yates, but did not receive the rest. *Id.* A few weeks later, Yates committed suicide and there was not enough money left in Yate's trust account to pay out the rest of the proceed to Knight. *Id.* Subsequently, Knight brought a conversion action against Tifton and won a jury verdict. *Id.* Thereafter, Tifton filed a claim against Reliance under the terms of a fidelity bond issued by Reliance to Tifton. *Id.* The fidelity bond contained the following definition of forgery:

> the signing of the name of another person or organization with intent to deceive; it does not mean a signature

which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

*Id.* at 450. As Yates' signature appeared on the back of draft as a part of the endorsement, in granting summary judgement in favor of Reliance, the Court stated that "[Yates'] signature clearly consisted in whole or in part of the endorser's own name ... [and t]he explicit agreement of the parties was to exclude from the bond's coverage situations such as this, and the court will not now amend that agreement." *Id.*

Similar language was dealt with by the Seventh Circuit Court of Appeals in *Alpine State Bank v. Ohio Casualty Insurance Company,* 941 F.2d 554 (7th Cir. 1991). In this case, William Secrest ("Secrest"), an employee of Rockford Fluid Power International Inc. ("Rockford"), misappropriated more than $100,000 in checks that had been drawn to the order of Rockford. *Id.* at 556. Secrest endorsed the checks with a rubber stamp that read "for deposit only—account number 58–070–8" and deposited the check into his personal account at Alpine State Bank ("Alpine"). *Id.* Rockford brought a suit alleging that Alpine is liable for the amount of the checks. *Id.* Subsequently, Alpine made a claim against a financial institution bond issued by Ohio Casualty Insurance Company ("OCIC") and OCIC denied the claim as the bond's definition of forgery did not cover the claim. *Id.* The bond defined forgery:

> Forgery means the signing of the name of another with intent to deceive; it does not include the signing of one's own name with or without authority, in any capacity, for any purpose.

*Id.* at 559–60.

Judge Ripple, in reversing the district court's decision, held that the plain language of the bond controlled the scope of the coverage afforded by the bond and that the bond did not contain any ambiguities. *Id.* The Court denied coverage under forgery since Secrest's own name was on the deposit slip and the definition in the bond specifically excluded the signing of one's own name for *any purpose.* *Id.* at 560.

■ In the present case, Lusitania contends that Leuzzi's signature should essentially be ignored because it was only included because of Lusitania's internal policy and was therefore not a part of the endorsement. However, the definition of forgery in the Bond specifically excludes the signing of one's own name "in whole or in part ... for any purpose" like *Reliance* or *Alpine State Bank.* As Leuzzi's own signature is reflected on the back of the Check, it is clearly a part of the endorsement and falls under the exception to the forgery definition. Furthermore, the definition of forgery excludes the signing of the person's name regardless of whether Leuzzi placed her signature on the Check for an endorsement purpose or just for an identification purpose. Thus, the presence of Leuzzi's signature exempts the Check under the definition of forgery pursuant to the Bond. Therefore, the Court concludes that this does not qualify as "forgery" under the Bond.

Lusitania further refers to Article 3 of the Uniform Commercial Code ("UCC"), N.J.S.A. 12A:3–101 *et seq.,* for the definitions of certain terms in the Bond. However, as stated above, the Bond contains no ambiguities as to the definition of "forgery" and, therefore, the Court refuses to redefine the term in the Bond through any extrinsic definitions. *See James,* 5 N.J. at 24–25, 73 A.2d 720; *See also, Alpine State Bank,* 941 F.2d at 560 (Reversing the district court's application of UCC to define forgery in a bond where there were no ambiguities in the contract); *French*

*American Banking Corp. v. Flota Mercante Grancolombiana*, 752 F.Supp. 83, 89 (S.D.N.Y.1990) (Declining to apply the criminal code's definition of forgery to an unambiguous insurance contract).

For the foregoing reasons, Plaintiff Lusitania's motion for summary judgement is denied and Progressive's motion for summary judgment is granted as to the issue of coverage under the Bond.

### 2. *Attorney's Fees & Litigation Costs*

As to attorney's fees and other litigation costs sought by Lusitania for the Wachovia Litigation, the Court must look to the Rider since the Bond itself does not contain any language or clauses which entitle Lusitania to reimbursement for attorney's fees or litigation costs. In fact, the Rider sets forth rather broad coverage for a range of circumstances, providing that Progressive shall reimburse court costs and attorney's fees "in defending any suit or proceeding brought against the Insured [Lusitania] to enforce the liability or alleged liability of the Insured for any loss, claim or damage which ... would constitute a valid and collectible loss under this bond" *Teixeira Certification* Ex. G. However, as stated in the previous section, the Court agrees with Progressive that Lusitania cannot get reimbursement from Progressive under the Insuring Agreement D of the Bond because Leuzzi's signature excluded the Check from the definition of forgery under the Bond. Thus, the claim does not constitute "a valid and collectible loss" under the Bond and Lusitania's attorney's fees and costs incurred in the Wachovia Litigation are not covered by the Rider.

For the foregoing reasons, Plaintiff Lusitania's motion for summary judgement is denied and Progressive's motion for summary judgment is granted as to the issue of coverage for attorney's fees and costs under the Rider.

### CONCLUSION

For the foregoing reasons, the Court grants Defendant's summary judgment motion and denies Plaintiff's summary judgment motion.