

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-5-2005

# Lusitania Sav Bank v. Progressive Cslty

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3503

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Lusitania Sav Bank v. Progressive Cslty" (2005). *2005 Decisions.* Paper 902.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/902

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-3503
_____

LUSITANIA SAVINGS BANK, FSB,
*Appellant*
v.

PROGRESSIVE CASUALTY INSURANCE COMPANY

_____

On Appeal From the United States District Court
For the District of New Jersey
(D.C. No. 03-cv-02902)
Magistrate Judge: Honorable Susan D. Wigenton
_____

Submitted Under Third Circuit LAR 34.1(a)
June 30, 2005
Before: RENDELL, BARRY and BECKER, *Circuit Judges*

(Filed July 5, 2005)

_____

OPINION
_____

BECKER, *Circuit Judge.*

This is an insurance coverage dispute over a false endorsement on a check. It is a

rather bizarre case. A non-party malefactor acquired a check made out to a company, set

up her own company with the same name, endorsed the check with her company's name and her own signature, and deposited the check. Lusitania, the bank in which she deposited the check, tried to recover the check's amount from Progressive, which insures it against, among other things, forgery. Progressive defended on the grounds that this case does not involve "forgery" as that term is defined in the policy, because the thief endorsed the check with her real name and the real name of her own company. The District Court granted summary judgment for Progressive. We affirm.

## I. Facts and Procedural History

### *A. The Check*

One Theresa Leuzzi somehow obtained a check from Nike, Inc., in the amount of $198,124.00, payable to "TCS America, 101 Park Avenue, 26th Floor, New York, NY 10178." TCS is a corporation that did some consulting work for Nike; Leuzzi had no connection with TCS. The check was drawn on Wachovia Bank. Leuzzi decided to cash the check. To do so, she filed a Business Name Certificate with the clerk of Hudson County, NJ, stating that she conducting a "sport clothing" business under the name "T.C.S. America." The certificate listed T.C.S.'s address as "231 Kearny Av., Kearny, NJ 07071."

Leuzzi then went to the Newark branch of the Lusitania Savings Bank and opened an account in the name of T.C.S. America. As required under Lusitania policies, she presented the Business Name Certificate, as well as her own personal identification

2

documents (passport and naturalization certificate). She successfully opened an account and, several days later, returned to the branch to deposit the check. To do so, she endorsed it as follows:

> Deposit only: TCS
> [Leuzzi's signature][1]
> 010015743
> 014015744

The numbers in the endorsement are "T.C.S. America"'s (Leuzzi's company) checking account numbers. On subsequent visits to the Lusitania branch, she issued $59,801 in checks on the account; she also issued checks for the remaining value of the account while not present at the branch.

The real TCS America eventually realized that it had not been paid, and inquired of Nike, which inquired of Wachovia. Wachovia reimbursed Nike and brought suit, which led to a settlement between Wachovia and Lusitania under which Lusitania paid Wachovia $198,124, the face value of the check, without interest or attorneys' fees. No money seems to have been recovered from Leuzzi.

### B. The Bond Agreement

Lusitania maintained an insurance agreement with Progressive. This agreement is known as a "financial institution bond," "bankers' blanket bond," or "fidelity bond," which insures a bank against losses caused by embezzlement, forgery, and similar acts.

---

[1] While Leuzzi's signature is not especially legible, it is concededly the same as the signature on the "T.C.S. America" account's signature card.

Insuring Agreement (D) of the fidelity bond, titled "Forgery or Alteration," covers Lusitania for "Loss resulting directly from (1) Forgery or alteration of, on or in any Negotiable Instrument (except an Evidence of Debt), Acceptance, Withdrawal Order, receipt for the withdrawal of Property, Certificate of Deposit or Letter of Credit."

Section 1(i) of the Definitions part of the fidelity bond, in turn, defines forgery as follows:

> Forgery means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

A rider provides coverage for court costs and attorneys' fees incurred by Lusitania in defending any claim "which, if established against [Lusitania], would constitute a valid and collectible loss under this bond."

### C. This Suit

Lusitania claimed coverage for the Nike/TCS check under Insuring Agreement (D), arguing that the endorsement in the name of TCS constituted forgery. Progressive agreed to provide coverage for the $59,801 in checks on the T.C.S. America account that Leuzzi issued at the bank. This loss fell under Insuring Agreement (B), under which Progressive indemnified Lusitania for larceny committed on the bank's premises. Progressive therefore paid $34,801, the covered amount minus a $25,000 deductible. But Progressive refused to pay for the approximately $138,000 that Lusitania lost to checks issued by Leuzzi while not physically present at the branch. It also refused to pay

4

Lusitania's costs of litigating against Wachovia.

Lusitania then brought suit in a New Jersey court, and Progressive removed to the District of New Jersey. The parties filed cross-briefs for summary judgment, and Magistrate Judge Wigenton granted summary judgment to Progressive on July 30, 2004. She found that, because Leuzzi had signed her own name on the check, her endorsement did not constitute a forgery under the bond agreement's definition of the term, and therefore that there was no coverage. Lusitania timely appealed to this Court.[2]

## II. Analysis

The only question in this appeal is whether Leuzzi's endorsement of the Nike check constituted "forgery" within the meaning of the fidelity bond agreement. If it was forgery, then Progressive must indemnify Lusitania for the entire amount of the loss stemming from that check, including attorneys' fees. If it was not forgery, then Progressive is not liable to Lusitania under Insuring Agreement (D), and does not owe any additional money.

### A. Leuzzi's Own Signature

Magistrate Judge Wigenton found that Leuzzi's endorsement did not constitute forgery because it included her own signature. Leuzzi signed the check with her own

---

[2]The District Court had diversity jurisdiction under 28 U.S.C. § 1332(a). New Jersey law applies. We have appellate jurisdiction under 28 U.S.C. § 1291. In reviewing a District Court's (or Magistrate Judge's) grant of summary judgment, this Court exercises plenary review over rulings of law, and may reject factual findings only if they are clearly erroneous.

name, and the policy defines forgery to mean "the signing of the name of another person or organization with intent to deceive," but not "a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose." As the endorsement here consists in part of Leuzzi's own name, it was not a forgery.

Lusitania argues, however, that the endorsement on the check read only "Deposit only TCS." Leuzzi's own signature was not part of the endorsement; rather, it was required only as part of the bank's operating procedures, which mandate that a person affixing a corporate endorsement sign her own name in order to identify herself. We recognize the appeal of this argument: Progressive is responsible for losses "resulting directly from" forgery; if Leuzzi's signature did not cause the loss, then the fact that it is her real signature would not excuse Progressive from paying.

But we think that Leuzzi's signature was part of the endorsement of the check. The New Jersey Uniform Commercial Code (UCC) defines endorsement as follows:

> "Indorsement" means a signature . . . that alone or accompanied by other words is made on an instrument for the purpose of negotiating the instrument, restricting payment of the instrument, or incurring endorser's liability on the instrument, but regardless of the intent of the signer, *a signature and its accompanying words is an endorsement* unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than endorsement.

N.J. Stat. Ann. § 12A:3-204(a) (emphasis added). The emphasized language suggests that all accompanying words constitute part of the endorsement—including Leuzzi's

6

signature, which certainly accompanied her endorsement as TCS, and which she and Lusitania both viewed as essential to negotiating the check.[3]

Because the policy defines forgery to exclude "a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose," and because the endorsement on this check consisted in part of Leuzzi's own name, Lusitania's losses did not result from "forgery," and so are not covered.

### B. The Signature for "T.C.S."

Progressive also argues that Leuzzi's endorsement as "TCS" was not a forgery, because it was the name of her own business. Although the Magistrate Judge did not address this argument, we agree that it provides an alternative reason to affirm.

While "T.C.S. America," Leuzzi's company, had no actual operations, it does seem to have had a real legal existence. Leuzzi filled out a Business Name Certificate for T.C.S., with her true name and address listed as the proprietor; the Certificate was properly signed, notarized, and filed with the Hudson County Clerk. *See* N.J. Stat. Ann. § 56:1-1. The business certainly had a real bank account at Lusitania, with a properly completed account opening and with Leuzzi as an authorized signer. Thus, because Leuzzi signed T.C.S.'s real name and deposited the money to T.C.S.'s own bank account, the signature was not a forgery. *See Alpine State Bank v. Ohio Cas. Ins. Co.*, 941 F.2d 554 (7th Cir. 1991).

---

[3] Lusitania admits that its policies require agents to sign their own names when endorsing checks on behalf of business accounts. (*See* Br. of Appellants 13.)

We concede that Leuzzi did not exactly endorse the check as "T.C.S. America"—she endorsed it as "TCS," which is closer to the name of the defrauded company (in that it omitted the periods in the name). The UCC, however, considers a signature to be an endorsement if it is in a name "substantially similar to that of the payee." N.J. Stat. Ann. § 12A:3-404(c). And Lusitania clearly took the "TCS" endorsement to refer to "T.C.S. America" (Leuzzi's company), since it deposited the check into that company's account. Indeed, Leuzzi wrote "T.C.S. America"'s account numbers under the endorsement, thus making it very clear on whose behalf she endorsed the check.[4]

### III. Conclusion

Leuzzi endorsed the check with the true name of her own business, her own true signature, and her own true account numbers. Under the definition in Lusitania's fidelity bond, this endorsement was not a forgery, and Lusitania is not entitled to coverage. We will therefore affirm the judgment of the District Court.

---

[4]Lusitania could have avoided the fraud perpetrated by Leuzzi if it had noticed that the address given on "T.C.S. America's" account documents and Business Name Certificate did not match that printed on the front of Nike's check to the real TCS America.