In the

# United States Court of Appeals
## For the Seventh Circuit

No. 08-2024

DONALD C. PERRY and WILLIAM WILK,

*Plaintiffs-Appellants,*

*v.*

SHEET METAL WORKERS' LOCAL NO. 73 PENSION FUND,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 635—**Jeffrey N. Cole**, *Magistrate Judge.*

ARGUED JANUARY 12, 2009—DECIDED OCTOBER 27, 2009

Before EASTERBROOK, *Chief Judge*, and WILLIAMS and SYKES, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Donald Perry and William Wilk maintain they should have received pension credit from the Sheet Metal Workers' Local No. 73 Pension Fund for the time they spent as instructors at a Chicago trade school. They emphasize that James Slovey, who worked at the same school at the same time they did, received

the credit they seek. We affirm the grant of summary judgment in favor of the pension fund, however, as the plan language provides for pension credit only if an employer has made contributions to the fund on an employee's behalf. Contributions were made to the pension fund on behalf of Slovey, who served as the Apprentice Coordinator, but not on behalf of instructors Perry and Wilk. The pension fund therefore complied with the terms of the plan when it declined to award Perry and Wilk the pension credit they seek. This case also gives us occasion to remind litigants that if the district court does not enter a proper Rule 58 judgment, the parties should ask the district court to do so.

## I. BACKGROUND

Donald Perry and William Wilk are participants in the Sheet Metal Workers' Local No. 73 Pension Fund ("Pension Fund"). From 1984 through October 1993, both were instructors in an apprenticeship training program at the City of Chicago's Washburne Trade School. Neither received pension credit from the Pension Fund for time spent as an instructor at Washburne.

Perry wrote a letter to the Pension Fund in November 2005 asking for 8.25 years of pension credit for his time at Washburne. The Pension Fund denied his request. Perry then wrote a letter appealing the decision. He pointed out that James Slovey had also worked at Washburne at the same time and that Slovey received pension credit for his time at Washburne.

The Pension Fund's trustees discussed Perry's appeal at a July 2006 meeting. As the Pension Fund explained in a letter to Perry, it denied his appeal because Washburne Trade School was his employer for the work in question. Washburne was never a "Contributing Employer" under the terms of the plan, nor had the plan been amended to include Washburne retroactively as a Contributing Employer. The letter further explained that Slovey, in contrast, was employed as the Apprentice Coordinator and had received credit because of contributions made by the Sheet Metal Workers' Local 73 Joint Apprenticeship and Journeymen's Training Fund (not to be confused with the defendant Pension Fund, a separate entity), which was a "Contributing Employer" under the plan's terms. The letter also stated that the Pension Fund would provide Perry, upon request and free of charge, access to and copies of all documents, records, and other information relevant to his claim. Perry did not request any documents. Wilk wrote a letter similar to Perry's initial letter and also did not receive credit for his years at Washburne. The Pension Fund has no record of responding to the letter or of any further correspondence from Wilk.

After Perry's appeal to the Pension Fund was denied, Perry and Wilk filed suit in federal court under ERISA, alleging they had been denied benefits in violation of 29 U.S.C. § 1132(a)(1)(B). The Pension Fund moved for summary judgment and attached an affidavit from Joseph Ohm, the Pension Fund's administrator. Ohm stated in the affidavit that the Apprentice Fund made contributions to the Pension Fund on Slovey's behalf for

his service at Washburne pursuant to a participation agreement between the Apprentice Fund and the Pension Fund. Ohm did not attach a copy of the actual participation agreement, nor is one in the record. Ohm also stated in the affidavit that the Pension Fund had no record of any participation agreement or other agreement that obligated the Apprentice Fund to make contributions to the Pension Fund on behalf of Perry or Wilk for their service at Washburne.

The district court granted summary judgment to the Pension Fund in a sixteen-page memorandum opinion entered on March 24, 2008. The district court docket also contains minute entries on March 24 and 26, 2008, but there is no judgment on form AO450, the form often used to ensure a proper judgment is in place that satisfies Federal Rule of Civil Procedure 58. On April 24, 2008, Perry and Wilk filed their notice of appeal, which stated they were appealing from "the Judgment and Memorandum Opinion and Order granting Defendant's motion for summary judgment and denying Plaintiffs' motion for summary judgment entered on March 24, 2008."

## II. ANALYSIS

### A. Jurisdiction

The threshold issue in this case, as in any case, is whether we have jurisdiction. There is no question that this appeal is from a final decision. *See* 28 U.S.C. § 1291. Instead, the jurisdictional question here centers around the timeliness of the notice of appeal. With exceptions not

relevant in this case, the Federal Rules of Appellate Procedure provide that a notice of appeal in a civil case must be filed with the district court clerk "within 30 days after the judgment or order appealed from is entered." Fed. R. App. P. 4(a)(1)(A); *see also* 28 U.S.C. § 2107(a). Here, the district court's memorandum opinion granting summary judgment to the Pension Fund was entered on March 24, 2008. Because Perry and Wilk did not file their notice of appeal until April 24, 2008, more than thirty days after the entry of the memorandum opinion, the Pension Fund argues the notice was filed too late and that we should therefore dismiss the case. *See Bowles v. Russell*, 551 U.S. 205, 214 (2007) (timely filing of a notice of appeal in a civil case is a jurisdictional requirement).

But the analysis is not that simple. As we said, Appellate Rule 4(a)(1)(A) measures the time to file a notice of appeal from the date when "the judgment or order appealed from is entered." The Rules elaborate on entry of a judgment or order in Appellate Rule 4(a)(7), which contains different requirements depending on whether Federal Rule of Civil Procedure 58(a) mandates a separate document. The grant of a motion for summary judgment is not one of the exceptions to the separate document requirement listed in Rule 58(a), so a separate document was required in this case to have a proper Rule 58 judgment. Appellate Rule 4(a)(7)(a)(ii) provides that when a separate document is required, the judgment is entered for Rule 4 purposes when the judgment is entered in the civil docket and the earlier of these events occurs:

- the judgment or order is set forth on a separate document, or

- 150 days have run from entry of the judgment or order in the civil docket under Federal Rule of Civil Procedure 79(a).

A question, then, is whether the judgment was set forth on a "separate document." The March 24 sixteen-page memorandum opinion resolved all claims and detailed the grant of summary judgment in the Fund's favor, but it does not set forth the judgment on a separate document and so does not satisfy the "separate document" requirement. There are two other potentially relevant events, a minute entry on March 24[1] and another minute entry on March 26.[2] We have suggested before that some minute

---

[1]  The March 24, 2008 minute entry states:

> The defendant's motion for summary judgment is granted, and the plaintiffs' motion for judgment is denied. Enter Memorandum Opinion and Order.

At the bottom of the minute entry is a box for "Courtroom Deputy Initials," and that box contains three typed initials.

[2]  The March 26, 2008 minute entry states:

> Notification of Docket Entry
>
> > This docket entry was made by the Clerk on Wednesday, March 26, 2008:
> >
> > MINUTE entry before Judge Honorable Jeffrey Cole: Pursuant to the minute order and memorandum opinion and order entered on 3/24/08

(continued...)

entries might satisfy the "separate document" requirement. *See Nocula v. UGS Corp.*, 520 F.3d 719, 724 (7th Cir. 2008); *Am. Nat'l Bank & Trust Co. of Chi. v. Sec'y of Hous. & Urban Dev.*, 946 F.2d 1286, 1289 (7th Cir. 1991); *cf. Rush Univ. Med. Ctr. v. Leavitt*, 535 F.3d 735, 737 (7th Cir. 2008). But the Fund expressly disavowed any argument that a minute entry constituted the judgment on a separate document that started the running of the notice of appeal clock, so we will not consider such an argument here. (And, of course, there is more to Rule 58 than the separate document rule in subpart (a). *See, e.g.,* Fed. R. Civ. P. 58(b)(1) (stating, "the clerk must, without awaiting the court's direction, promptly prepare, *sign*, and enter the judgment" (emphasis added) when, among other things, "the court denies all relief." )).

When a judgment is not set forth on a separate document even though Rule 58(a) requires that it be, Appellate Rule 4(a)(7)(ii) says the judgment is treated as entered 150 days after its entry on the civil docket. That means that the time to file a notice of appeal starts to run then. *See* Fed. R. App. P. 4(a)(1)(A); *see also Employers Ins. of Wausau v. Titan Int'l, Inc.*, 400 F.3d 486, 488 (7th Cir. 2005). The 2002 Advisory Committee notes to the rule explain that prior to its amendment, there had been a circuit

---

[2] (...continued)

> granting defendant's motion for summary judgment this civil case is terminated. Mailed notice.

Three typed initials follow that text as well.

split on the following question: "When a judgment or order is required to be set forth on a separate document under Fed. R. Civ. P. 58 but is not, does the time to appeal the judgment or order—or the time to bring post-judgment motions, such as a motion for a new trial under Fed. R. Civ. P. 59—ever begin to run?" Rules 4(a)(7)(A) and Federal Rule of Civil Procedure 58 were amended to impose a time cap:

> Under the amendments, a judgment or order is generally treated as entered when it is entered in the civil docket pursuant to Fed. R. Civ. P. 79(a). There is one exception: When Fed. R. Civ. P. 58(a)(1) requires the judgment or order to be set forth on a separate document, that judgment or order is not treated as entered until it is set forth on a separate document (in addition to being entered in the civil docket) or until the expiration of 150 days after its entry in the civil docket, whichever occurs first. This cap will ensure that parties will not be given forever to appeal (or to bring a postjudgment motion) when a court fails to set forth a judgment or order on a separate document in violation of Fed. R. Civ. P. 58(a)(1).

Fed. R. App. P. 4 advisory committee's note (2002).

So the 30-day time limit to file a notice of appeal did not begin to run until 150 days after March 24, 2008, and the notice of appeal Perry and Wilk filed on April 24, 2008 was timely. *See* Fed. R. App. P. 4(a)(2) (notice of appeal filed after decision but before entry of judgment treated as filed on date of and after entry); *McDonald v. Household*

*Int'l, Inc.*, 425 F.3d 424, 426-27 (7th Cir. 2005). We conclude this discussion by reminding litigants that if the court has not entered a proper Rule 58 judgment on a separate document, the parties should ask the court to do so. The rules specifically contemplate this: "[a] party may request that judgment be set out in a separate document as required by Rule 58(a)," Fed. R. Civ. P. 58(d), and there is good reason to do so. "[T]he document clarifies what the ultimate result is, benefiting both the parties (for purposes of enforcement and clarity of legal obligation) and the judicial system (for providing a clear time period for taking an appeal)." *Kunz v. DeFelice*, 538 F.3d 667, 673 (7th Cir. 2008). Satisfied that we have jurisdiction, we proceed to the merits.

### B. Summary judgment was proper.

Our review of a district court's grant of summary judgment is de novo, *Narducci v. Moore*, 572 F.3d 313, 318 (7th Cir. 2009), and we construe all facts in the record in the light most favorable to the non-moving party, *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406 (7th Cir. 2009). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Although our review of the district court's decision is de novo, the language of the plan determines what deference, if any, we afford to the plan administrator's determination. The Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be

reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Here, the plan gave the administrator discretionary authority in both situations, and the parties agree that our review of the denial of pension credit in this case asks whether that decision was arbitrary and capricious. *See Fischer v. Liberty Life Assur. Co.*, 576 F.3d 369, 375 (7th Cir. 2009); *Speciale v. Blue Cross & Blue Shield Ass'n*, 538 F.3d 615, 621 (7th Cir. 2008).

Perry and Wilk brought a claim under 29 U.S.C. § 1132(a)(1)(B), which allows a suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." ERISA requires fiduciaries to discharge their duties "in accordance with the documents and instruments governing the plan," 29 U.S.C. § 1104(a)(1)(D), and our inquiry therefore requires that we determine whether the Pension Fund complied with the plan's provisions regarding the award of pension credits. *See Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 552 (7th Cir. 1997).

The plan states that a participant "shall receive Pension Credits on the basis of his hours of Work in Covered Employment . . . ." The plan then defines "Covered Employment" as "employment of an Employee by an Employer for which contributions are required to be paid to the Fund . . . ." And the term "Employee" is defined as "a

person who is an employee of an Employer and who is covered by a collective bargaining agreement or any written agreement requiring Employer contributions to be made to this Pension Fund." No employer was ever required to make contributions to the Pension Fund on behalf of Perry or Wilk for their time at Washburne. Nor did any collective bargaining or participation agreement require that such contributions be made. Therefore, the Pension Fund acted in accordance with the language of the plan when it concluded Perry and Wilk were not entitled to pension credit for the period requested.

Instead of focusing on the language of the plan, Perry and Wilk maintain there is information missing from the record that precludes the entry of summary judgment against them. They emphasize on appeal that the participation agreement that covered Slovey is not in the record. That a participation agreement covered Slovey but not Perry and Wilk is not in dispute, however. Perry and Wilk acknowledged the participation agreement's existence in their response to the Pension Fund's motion for summary judgment, arguing only that the fact that the participation agreement covered Slovey but not them was unfair. *See* Pls.' Resp. to Def.'s Mot. for Summ. J. at 3-6. That seems to be their argument on appeal as well, as they argue that the Pension Fund needed to provide a thorough explanation as to *why* Perry and Wilk were excluded from the participation agreement that covered Slovey and why Slovey received credit and not them.

It is not enough, though, to point out that pension credit or benefits have been awarded to another person. *See*

*McNab v. Gen. Motors Corp.*, 162 F.3d 959, 961 (7th Cir. 1998). It is possible, for example, that a fund might erroneously award benefits to a participant, but that would not mean that it was bound to repeat its error with others who came along. *See id.* In addition, ERISA fiduciaries have broad discretion to design their plans. *See King v. Nat'l Human Res. Comm., Inc.*, 218 F.3d 719, 723 (7th Cir. 2000); *Ames v. American Nat'l Can Co.*, 170 F.3d 751 (7th Cir. 1999) (explaining that employer could design plan how it wished for business reasons, and ERISA provided no relief for employees whose group did not receive certain benefits under employer's transitional programs). And although a premise of Perry and Wilk's argument is that Slovey was "similarly situated" to them, Slovey coordinated the apprentice program and directed Perry and Wilk, while Perry and Wilk were simply instructors. They did not all have the same role at the school.[3]

---

[3] Perry and Wilk also cite to 29 U.S.C. § 186(c)(5)(B), a provision in the Labor Management Relations Act ("LMRA"). Their complaint does not list a claim under the LMRA. Nonetheless, that provision does not require that the Pension Fund provide a detailed explanation for why it covered Slovey but not Perry and Wilk. Section 302 of the LMRA generally forbids employer payments to representatives of employees (unions). *See* 29 U.S.C. § 186(a); *Bricklayers Local 21 of Ill. Apprenticeship and Training Program*, 385 F.3d 761 (7th Cir. 2004). There is an exception for payments to an employee trust fund where "the detailed basis on which such payments are to be made is specified in a written agreement with the employer" and payments are made in conformity with those terms. 29 U.S.C. § 186(c)(5)(B); *see*

(continued...)

We close by turning again to the document that matters, the plan. *See McNab,* 162 F.3d at 961. The plan makes clear that the only persons who receive pension credit are persons for whom a written agreement required that the employer make contributions to the Pension Fund on their behalf. There is no triable issue that Perry and Wilk were so covered, so granting summary judgment to the Pension Fund was proper.

### III. CONCLUSION

The district court's grant of summary judgment is AFFIRMED.

---

[3] (...continued)
*Mazzei v. Rock-N-Around Trucking, Inc.,* 246 F.3d 856, 961-62 (7th Cir. 2001). Nothing in section 302, however, requires a benefit plan to explain why it covers some employees and not others.

---