In the

# United States Court of Appeals

### For the Seventh Circuit

No. 15-3174

CALUMET RIVER FLEETING, INC.,

*Plaintiff-Appellee,*

*v.*

INTERNATIONAL UNION OF OPERATING ENGINEERS,
LOCAL 150, AFL-CIO,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14-cv-00133 — **Sharon Johnson Coleman**, *Judge.*

ARGUED FEBRUARY 23, 2016 — DECIDED MAY 31, 2016

Before WOOD, *Chief Judge*, and SYKES and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. In July 2013, plaintiff Calumet River Fleeting, Inc. fired a boat operator, and defendant International Union of Operating Engineers, Local 150, AFL-CIO ("the Union") filed a grievance with Calumet over the termination. Calumet refused to participate in the arbitration, saying that although it was once a party to a collective bargaining

agreement with the Union, Calumet had terminated its participation in that agreement before the dispute arose over the firing. When the Union took steps to start the arbitration, Calumet filed this suit to stop it. The Union counterclaimed for an order compelling arbitration. The district court granted summary judgment to Calumet, holding that it was no longer a party to any agreement with the Union that might have required arbitration.

The Union has appealed, arguing that an earlier arbitration award in an unrelated proceeding had found that Calumet was an alter ego of Selvick Marine Construction, LLC, a company that was a party to the collective bargaining agreement. By virtue of the alter ego relationship, the Union contends that Calumet had to submit to arbitration.

We affirm. We first find that we have appellate jurisdiction over this matter despite the lack of a separate judgment. On the merits, the arbitration award on which the Union relies does not show that Calumet was still a party to the collective bargaining agreement. Calumet is entitled to judgment as a matter of law.

I.   *Factual Background and Procedural History*

We review *de novo* a district court's decision on cross-motions for summary judgment. *Exelon Generation Co. v. Local 15, International Brotherhood of Electrical Workers*, 540 F.3d 640, 643 (7th Cir. 2008). The general standards for summary judgment do not change: with "cross summary judgment motions, we construe all facts and inferences therefrom 'in favor of the party against whom the motion under consideration is made.'" *In re United Air Lines, Inc.*, 453 F.3d 463, 468 (7th Cir. 2006), quoting *Kort v. Diversified Collection Services, Inc.*, 394

F.3d 530, 536 (7th Cir. 2005). Because we need consider only Calumet's motion for summary judgment, we resolve all factual disputes and draw all reasonable inferences in the Union's favor.

A. *Background of the Companies and Their Relationship with the Union*

Plaintiff Calumet River Fleeting, Inc. is a Wisconsin corporation engaged in marine towing. It was formed by John Selvick in 1999. The International Union of Operating Engineers, Local 150, AFL-CIO is a labor organization that represents heavy equipment operators, mechanics, and other employees in parts of Illinois, Indiana, and Iowa.

In 2006, Calumet and the Union signed a memorandum of agreement binding Calumet to the terms of the Great Lakes Floating Agreement. The Floating Agreement is a collective bargaining agreement that covers marine construction. The memorandum of agreement contained an "evergreen clause" requiring the employer to adhere to the terms of each successive edition of the agreement unless and until the agreement was properly terminated.

In September 2008, Calumet terminated its participation in the Floating Agreement. This meant that contractors who were themselves signatories to the Floating Agreement could no longer hire Calumet without violating the agreement's subcontracting provision. Less than two years later, in April 2010, John Selvick organized a new company called Selvick Marine Construction, LLC. Selvick Marine signed a memorandum of agreement with the Union on June 2, 2010 adopting the terms of the Floating Agreement. Mr. Selvick also signed a towing addendum on Selvick Marine's behalf. The

towing addendum covers non-construction towing work. Like the Floating Agreement, it contains an evergreen clause.

B. *The 2012 Arbitration*

In September 2011, the Union filed three grievances against Selvick Marine, initiating the three-step grievance procedure prescribed by the Floating Agreement. The Union alleged that Selvick Marine had violated the Floating Agreement when it performed certain work without following the agreement's procedures. It was actually Calumet, not Selvick Marine, that had performed the work in question, but the Union sought to hold Selvick Marine accountable. Under the Union's theory, the two companies were alter egos, so Calumet's actions—and its failure to comply with the Floating Agreement—were attributable to Selvick Marine, which was a party to the Floating Agreement.

The parties could not agree on the grievances, so the Union submitted them to arbitration. Selvick Marine appeared to participate. Calumet did not, although it had been served with a subpoena *duces tecum* that identified the date and time of the arbitration. In between hearing dates, the Union filed suit to enforce the subpoena. In that suit, Calumet argued that it was not Selvick Marine's alter ego, but it never made the same argument in front of the arbitrator.

On July 24, 2012, the arbitrator issued his decision and award. He found that John Selvick had formed Selvick Marine to recapture work that Calumet had lost when it terminated its agreement with the Union. The arbitrator concluded that Selvick Marine and Calumet were alter ego companies, pointing out: Mr. Selvick supplied capital to Selvick Marine; employees of both companies reported to the same location for

work; Selvick Marine used only Calumet boats in its work; and the companies shared stationery, employees, forms, logs, worksheets, fueling vendors, and insurance policies. Although Selvick Marine maintained it was a separate company, the arbitrator disagreed. He expressly declined to pass judgment on the legality of the arrangement between Calumet and Selvick Marine, but he found that when Calumet performed work using union employees in the Union's territory, that work was subject to the Floating Agreement by virtue of Selvick Marine's signatory status. He then sustained the Union's grievances.

Turning to the question of a remedy, the arbitrator found that the work that had violated the Floating Agreement could not be undone, nor could Selvick Marine retroactively comply with the relevant provisions of the agreement. He ordered back pay and benefits to make whole the Union workers who had not been compensated in conformity with the Floating Agreement. He did not order any prospective relief, however, noting that the 2009–2011 Floating Agreement had expired on December 31, 2011 and that it was unclear whether any continuing relationship existed between the Union, Selvick Marine, and Calumet since the agreement's expiration. Thus, he concluded, he was "without authority to issue such a prospective remedy."

Neither Selvick Marine nor Calumet ever sought to vacate or modify the arbitration award. Selvick Marine simply complied with it. Sometime in 2011 or 2012, though, Selvick Marine dissolved and liquidated operations.

C.  *The Present Dispute*

In July 2013, Calumet fired one of its boat operators, Angelo Zuccolo. The Union grieved the firing and eventually demanded arbitration. Calumet refused to participate in the arbitration on the ground that it was not a party to any collective bargaining agreement with the Union. The Union notified the American Arbitration Association of the dispute and requested an arbitration panel. Calumet then filed this suit seeking both a declaration that it was not a party to any collective bargaining agreements with the Union and an injunction preventing the Union from continuing with the arbitration. The Union counterclaimed, seeking, among other things, to enforce the July 2012 arbitration decision finding that Selvick Marine and Calumet were alter egos and an order compelling Calumet to submit to arbitration pursuant to the Floating Agreement. The Union agreed to postpone the arbitration pending the outcome of this suit.

Both parties moved for summary judgment. The district court rejected the Union's argument that the 90-day statute of limitations to challenge an arbitration award applied to Calumet's claims. The court also rejected the Union's attempt to rely on the arbitrator's alter ego finding to show that Calumet had been a party through Selvick Marine. The Union had offered no basis apart from the arbitrator's conclusion to support an alter ego finding, so the court concluded that it had no basis to enforce against Calumet in this action the arbitrator's finding that Calumet and Selvick Marine were alter egos. Finally, the district court rejected the Union's argument that the Norris-LaGuardia Act, 29 U.S.C. § 101 et seq., prohibited injunctive relief in the case.

For these reasons, the court granted Calumet's motion, denied the Union's motion, and dismissed the Union's counterclaims. The court did not, however, enter a separate judgment pursuant to Federal Rule of Civil Procedure 58. On September 30, 2015, the Union filed a notice of appeal.

II. *Appellate Jurisdiction*

Before addressing the merits of the appeal, we must be sure we have appellate jurisdiction. The Union contends it has appealed a final decision under 28 U.S.C. § 1291. Generally, an order is final for appeal purposes under § 1291 "if it ends the litigation and leaves nothing to be decided in the district court." *United States v. Ettrick Wood Products, Inc.*, 916 F.2d 1211, 1216 (7th Cir. 1990).

The question of appellate jurisdiction arose because the district court issued a memorandum opinion on the motions but did not enter a separate judgment under Federal Rule of Civil Procedure 58(a), which requires that a judgment be "set out in a separate document." "The grant of a motion for summary judgment is not one of the exceptions to the separate document requirement listed in Rule 58(a), so a separate document was required in this case to have a proper Rule 58 judgment." *Perry v. Sheet Metal Workers' Local No. 73 Pension Fund*, 585 F.3d 358, 361 (7th Cir. 2009); see also *Alpine State Bank v. Ohio Casualty Insurance Co.*, 941 F.2d 554, 558 (7th Cir. 1991) ("In satisfying the requirement of Rule 58, neither the memorandum opinion explaining the ruling on summary judgment, nor the minute order announcing the summary judgment can be substituted for a declaratory judgment."). And although Calumet had sought injunctive as well as declaratory relief, the court issued no separate injunction or declaration of rights following the memorandum opinion.

At oral argument, we asked for supplemental briefs on appellate jurisdiction. The responses satisfy us that we have jurisdiction over this appeal. First, the district court's failure to enter a separate Rule 58 judgment is not always decisive. Compliance with Rule 58 makes appellate jurisdiction simpler for the parties and the courts, but we may still have jurisdiction if we "know from other sources" that there has been a final judgment. *First Nat'l Bank of Chicago v. Comptroller of the Currency*, 956 F.2d 1360, 1363 (7th Cir. 1992); see also Fed. R. App. P. 4(a)(7)(B) ("A failure to set forth a judgment or order on a separate document when required by Federal Rule of Civil Procedure 58(a) does not affect the validity of an appeal from that judgment or order."). The federal rules deal with such oversights by district courts. When a judgment is not set forth on a separate document but Rule 58(a) requires it, we treat judgment as entered 150 days after the entry of the judgment or order on the civil docket. Fed. R. Civ. P. 58(c)(2)(B); Fed. R. App. P. 4(a)(7)(A)(ii); see also *Perry*, 585 F.3d at 362. In this case, the district court entered its memorandum opinion and order on September 4, 2015. The 150-day period thus lapsed on February 1, 2016, at which point judgment was effectively entered for appeal purposes, and the Union's earlier notice of appeal "is treated as filed on the date of and after the entry." Fed. R. App. P. 4(a)(2).

So the district court's failure to enter a Rule 58 judgment does not require dismissal. We still must ask whether the district court was finished with the case, even though it did not enter a separate injunction or declaration of the parties' rights. We take the question of the injunction first. Both the Federal Rules of Civil Procedure and the Norris-LaGuardia Act, which governs the issuance of injunctions in labor disputes, require the court to make any injunction specific. See Fed. R.

Civ. P. 65(d)(1) (order granting injunction must "state the reasons why it issued," "state its terms specifically," and "describe in reasonable detail … the act or acts restrained or required"); 29 U.S.C. § 109 (requiring that findings of fact be "made and filed by the court" and that injunction be limited to a prohibition of a "specific act or acts"). The absence of a separate and specific injunction could be a serious problem, but the parties' supplemental briefs told us that they have reached a compromise on the issue of injunctive relief. We see no need to remand to the district court for entry of an injunction that Calumet no longer seeks or needs.[1]

As for the request for declaratory judgment, we have said that "in declaratory judgment actions, district courts must declare specifically and separately the respective rights of the parties, not simply state in a memorandum opinion, minute order, or a form prescribed for judgment in a civil case that a motion has been granted or denied." *Alpine State Bank*, 941 F.2d at 558. No such declaration appears in the record. Still, we may nevertheless have jurisdiction if "'the practicalities weigh heavily' toward a common sense conclusion that the district court intended to enter a final judgment." *Id.* at 559 (internal citation omitted), quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 837 (1989).

Calumet's motion for summary judgment asked the district court to "enter a declaration that Calumet is not subject to the terms of any collective bargaining agreement with" the

---

[1] We also need not decide whether or not Federal Rule of Civil Procedure 65 applies to cases otherwise covered by the Norris-LaGuardia Act. See Fed. R. Civ. P. 65(e)(1) (Rule 65 provisions "do not modify … any federal statute relating to temporary restraining orders or preliminary injunctions in actions affecting employer and employee[.]").

Union. The court concluded "that based on the undisputed facts Calumet is not a signatory to the 2012–2014 [Floating Agreement] or any collective bargaining agreement with the Union. Calumet thus cannot be compelled to arbitrate the Zuccolo grievance or submit to an audit." It then granted Calumet's motion for summary judgment, which addressed all of Calumet's claims, and dismissed the Union's counterclaims. Despite the absence of a separate Rule 58 judgment, the district court's memorandum and the absence of any other claims or later actions by the court make sufficiently plain both what the court declared and that the district court was finished with the case. We thus have jurisdiction over this appeal. *Metzl v. Leininger*, 57 F.3d 618, 620 (7th Cir. 1995); see also *Buck v. U.S. Digital Communications, Inc.*, 141 F.3d 710, 711 (7th Cir. 1998) ("If the terms of declaratory relief appeared in the court's opinion and it were plain that the case is finished, we would not stand on ceremony—at least not as far as the need for a 'final decision' is concerned, although the lack of specificity might make the decision hard to enforce."). We proceed to the merits, where we can be brief.

III. *Analysis*

The district court correctly concluded that the arbitration award did not bind Calumet to the 2012–2014 Floating Agreement. We briefly address two preliminary matters that simplify our approach to the appeal. First, as noted above, the Union initially contended that the Norris-LaGuardia Act prohibited an injunction in this case. Since the parties have reached an agreement that eliminates the request and/or need for injunctive relief, we need not decide whether the district court correctly decided the Norris-LaGuardia issue. Second, because the Union agreed to postpone the arbitration pending

the outcome of this suit, it waived any argument that Calumet was required to allow the arbitration to reach a conclusion before proceeding with this case in court. Cf. *AT&T Broadband, LLC v. International Brotherhood of Electrical Workers*, 317 F.3d 758 (7th Cir. 2003) (discussing timing of litigation regarding arbitrability of a dispute and concluding company seeking anti-arbitration injunction was not entitled to pre-arbitration judicial review).

On the merits, the Union's argument begins and ends with the finding of alter ego in the 2012 arbitration award. The Union asks us to treat that finding as binding Calumet to the Floating Agreement for purposes of the dispute over Mr. Zuccolo's firing based on Selvick Marine's previous status as a party to the Floating Agreement. In support, the Union relies on the rule that failure to challenge an arbitration award within the applicable limitations period renders the award final. See *International Union of Operating Engineers, Local 150 v. Rabine*, 161 F.3d 427, 433–34 (7th Cir. 1998) ("The rule is a simple one: If you receive notice of an adverse decision in a federal labor arbitration, challenge it within 90 days or expect to pay up."). The Union also relies on the great deference courts give to arbitrators' awards, enforcing them as long as the arbitrator has arguably interpreted the collective bargaining agreement between the parties even if the courts believe the arbitrator seriously erred. E.g., *Prate Installations, Inc. v. Chicago Regional Council of Carpenters*, 607 F.3d 467, 471 (7th Cir. 2010), quoting *Clear Channel Outdoor, Inc. v. International Unions of Painters & Allied Trades, Local 770*, 558 F.3d 670, 677 (7th Cir. 2009).

These general rules are correct, but they do not address this situation. When the arbitrator entered the 2012 award, he

made clear that it should have no prospective effect. Not only did he refuse to order prospective compliance with the terms of the Floating Agreement, he did so expressly because the precise point on which the Union's current argument depends—the existence of a continuing relationship between Calumet and the Union—had not been established:

> Moreover, it is unclear on the record before the Arbitrator whether there is any continuing relationship, contractual or otherwise, between either IUOE Local 139 and/or IUOE Local 150 and [Selvick Marine] and/or [Calumet] since the expiration of the [Floating Agreement] on December 31, 2011.

Selvick Marine chose not to fight the alter ego determination or the award of back pay and benefits. It just paid the award. At that point, the alter ego determination had served its purpose, holding that Calumet had violated the agreement in the past and that Selvick Marine was liable for those violations. As a purely retrospective determination, the award could have no additional impact on Calumet's relationship with the Union going forward. In other words, once Selvick Marine paid the award, nothing remained for Calumet to challenge.

It therefore makes no difference here that an arbitration award cannot be challenged after the limitations period runs, *Rabine*, 161 F.3d at 433–34, or that judicial review of an award is so limited, *Prate Installations*, 607 F.3d at 471. The Union made a strategic decision to rely entirely on the award's alter ego finding as a basis to compel arbitration, but the award simply does not serve that function. It provided no prospective relief and had no prospective effect. It did not establish that Calumet was a party to the Floating Agreement when it

fired Zuccolo. It did not establish that Calumet was then the alter ego of Selvick Marine, which had dissolved sometime in 2011 or 2012.

Arbitration "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986) (internal quotation marks omitted), quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). The Union has failed to pose a genuine dispute of fact as to whether Calumet agreed to submit the termination of Zuccolo to arbitration. Its alter ego argument failed as discussed above, and the undisputed facts of record show that Calumet terminated its participation in the Floating Agreement in 2008. Nor has the Union presented any evidence that Calumet itself signed on to later versions of the agreement. On this record, Calumet was entitled to judgment as a matter of law.

We DISMISS the portion of the Union's appeal related to injunctive relief. The judgment of the district court is otherwise AFFIRMED.