Elaine E. Bucklo, United States District Judge
Plaintiff Linda Casey ("Casey") has sued American General Life Insurance Co. ("American General") for breach of contract based on American General's refusal to acknowledge her as the sole beneficiary of an annuity. The parties have filed cross-motions for summary judgment. For the reasons discussed below, American General's motion is granted and Casey's is denied.
I.
The relevant facts are largely undisputed.[1] On March 12, 2008, Natalie Bailey ("Bailey") submitted an application ("the First Application") to American General for a $97,000 annuity policy ("the policy"). The application designated Bailey as the Owner and Casey as the Joint Owner. The document contains a provision stating: "If you do not want the Joint Owner to be the Primary Beneficiary, check here and name Beneficiary below." Pl.'s Ex. B at 1. The box was checked, indicating that Casey was not to be the annuity's primary beneficiary. A list of eighteen beneficiaries was attached to the form specifying what percentage of the annuity each beneficiary was entitled to receive. Bailey's husband, for example, was entitled to thirty percent of the annuity; Casey was entitled to eight percent; others were entitled to two percent.
On March 17, 2008, American General issued the annuity policy to Bailey. The policy contains a provision stating: "If you make a beneficiary change, the change will take effect on the date you sign the change request form. However, we are not responsible for any payment or other action taken before we have received and acknowledged in writing your change request." Pl.'s Ex. C at 5.
*558 On April 18, 2008, Bailey and Casey submitted a second application ("the Second Application") for the same annuity. Pl.'s Ex. D. Again, Casey was listed as the Joint Owner of the annuity. This time, however, the box indicating that the Joint Owner was not to be the primary beneficiary was not checked. In addition, several other portions of the form remained incomplete. For example, no box was checked for the question asking, "Will this annuity replace or change any existing life insurance or annuity contract in this or any other company?" or the question, "Do you have any existing life insurance policies or annuity contracts?" Also left uncompleted were the sections of the form requesting the applicant's phone number, marital status, age, and gender. It is undisputed that American General received the Second Application in April 2008. Casey does not dispute that she did not receive any communication from American General acknowledging receipt of the Second Application at that time. Neither is there any record that Bailey was sent any acknowledgment.
After Bailey passed away in May 2011, Casey was appointed executor of her estate. Casey contacted American General about the annuity and was told that it had only the First Application on file. Casey claims that she informed American General that this was mistaken. Nevertheless, after making no headway with the company, she accepted the lesser amount and received a check from American General in the amount of $7,807.06. She also assisted other beneficiaries in submitting their claims and obtaining their shares.
According to Casey, she later contacted American General with a question she had been asked by another beneficiary and was told that American General in fact had both the First and Second Applications for the annuity. Casey later obtained copies of both applications, and in October 2011, she wrote American General stating that it had made an error in distributing the annuity funds in accordance with the First Application. Pl.'s Ex. L.
During October and November 2011, Casey had a number of phone conversations with American General representatives. Entries in the company's internal system for documenting telephone communications indicate that Casey was told by an American General representative that the company would contact the other beneficiaries and request return of the money that had been distributed to them. See, e.g. , Pl.'s Ex. K at AGL 011 ("CONTACT LINDA CASEY AND ADVISE WE WILL BE CONTACTING THE OTHER BENEFICIARIES REQUESTING THE FUNDS BACK-PER THE APPLICATION SCANNED 04/08/08 THIS POLICY HAS JOINT RIGHTS OF SURVIVORSHIP-PLEASE ADVISE LINDA CASEY MIGHT TAKE THRU END OF NEXT WEEK TO GET RESOLVE STARTED.").
On November 9, 2011, American General contacted Sheila Carter ("Carter"), one of the beneficiaries listed on the First Application, to request return of the funds that had been disbursed to her. Carter suggested that American General contact Geraldine Simmons ("Simmons"), a personal friend of Bailey's and the attorney of the estate. Simmons advised American General that she believed American General had acted properly in distributing the funds according to the First Application. She asked for copies of the documents and advised American General not to proceed further while she investigated the matter. On November 10, American General wrote the following to Simmons:
As you requested I have enclosed a copy of the first application submitted to our company with a list of the designated *559 beneficiaries for the above-referenced policy. I have also enclosed a copy of the second application that we received for Natalie Bailey as owner and annuitant with Linda Casey listed as joint owner of the policy. As you can see, this policy is different than the first application submitted as the box is no longer checked indicating that they would like for the surviving joint owner to receive the death benefits should one joint owner pass away.
Pl.'s Ex. M, Letter from Yvonne Salmon to Geraldine Simmons (Nov. 10, 2011).
On December 5, 2011, American General sent a letter to Casey stating, "Please be advised that as we now have competing claims, we will send this to our legal department and have them review to decide if an interpleader should be filed with the court to have them determine who should receive the funds." Pl.'s Ex. N, Letter from Angela Furlong to Linda Casey (Dec. 5, 2011). Casey contacted American General several times in the following months to inquire about the status of the matter. On March 8, 2012, American General sent Casey a letter rejecting her claim to the entire annuity:
Please be advised that after review with our legal department, the referenced annuity contract was setup [sic] based on the March application. We sent out the annuity welcome packet based on the March application and the policy owner was aware that the annuity was already setup [sic] based on the fact that they received the packet prior to executing the second application. Therefore, it has been determined that the death benefit proceeds were paid in accordance with the designations made on the March application as there were no subsequent beneficiary changes on record.
Pl.'s Ex. O, Letter from Angela Furlong, American General Annuity Claims Department, to Linda Casey (Mar. 8, 2012).
In March 2014, Casey filed suit in Illinois state court alleging breach of contract.[2] American General removed the suit to this court and later filed a motion to dismiss, which I denied. See Casey v. Am. Int'l Grp., Inc. , No. 14 C 3541, 2014 WL 5073155 (N.D. Ill. Oct. 9, 2014). Both parties have now moved for summary judgment.
II.
"Summary judgment is proper when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " Tegtmeier v. Midwest Operating Engineers Pension Trust Fund , 390 F.3d 1040, 1045 (7th Cir. 2004) (quoting Fed. R. Civ. P. 56(c) ). In the case of cross-motions for summary judgment, I "construe all facts and inferences therefrom in favor of the party against whom the motion under consideration is made." Calumet River Fleeting, Inc. v. Int'l Union of Operating Engineers, Local 150, AFL-CIO , 824 F.3d 645, 647-48 (7th Cir. 2016) (quotation marks omitted).
As discussed in my previous opinion ruling on American General's motion to dismiss, under Illinois law, American General is entitled to strict compliance with the terms of the annuity policy. Casey , 2014 WL 5073155, at *3. Moreover, the *560 "burden of proving that there has been strict compliance, and therefore an effective change of an insurance beneficiary, rests on the person claiming as the substitute beneficiary." 44A Am. Jur. 2d Insurance § 1983. Casey has failed to carry that burden here.
Pointing to the policy's change-of-beneficiary provision, American General contends that annuity beneficiaries can be changed only by submission of a "change request form," see Pl.'s Ex C at 5 ("If you make a beneficiary change, the change will take effect on the date you sign the change request form."), not by submitting a second annuity application. American General has submitted the form in question as an exhibit to its Local Rule 56.1(b)(C)(3) Statement of Additional Material Facts. See Def.'s N.D. Ill. L.R. 56.1(b)(3)(C) Stmt. of Add'l Material Facts, Ex. A. American General's Local Rule 56.1(b)(3)(C) Statement asserts that in 2008, this was the form it used to make beneficiary changes to annuity policies. Id. ¶ 1 Since Casey has not replied to American General's Local Rule 56.1(b)(3)(C) Statement, these representations are deemed admitted. See N.D. Ill. L.R. 56.1(a)(3) ("All material facts set forth in the statement filed pursuant to section (b)(3)(C) will be deemed admitted unless controverted by the statement of the moving party."). It follows that submission of the second annuity application form did not constitute strict compliance with the policy's requirements for changing beneficiaries. As a result, American General is entitled to summary judgment.
I note, however, that even without the change request form, Casey has failed to present a plausible case in support of her claim that she strictly complied with the policy. First, Casey offers no reasonable basis for thinking that the annuity application form was intended to be used to change beneficiaries. According to Casey, American General must have intended the form to serve this purpose because it asks, "Will this annuity replace or change any existing life insurance or annuity contract in this or any other company?" The question makes no reference to beneficiaries. In any event, neither box is checked in response to this question on the Second Application. Thus, even assuming that submitting a second annuity application could otherwise have been an acceptable method for changing beneficiaries, the Second Application would have failed to provide the necessary information and would not have constituted strict compliance with the policy's requirements.[3]
III.
For the reasons above, American General's motion for summary judgment is granted and Casey's motion is denied.
ENTER ORDER.

The parties present conflicting allegations and evidence in support of their respective views regarding the manner in which the decedent would have wanted the annuity to be distributed. However, the parties' disputes on these points are irrelevant for purposes of resolving their summary judgment motions.

The policy includes a provision stating that it is governed by the laws of the state in which it was delivered. See Pl.'s Ex. C at 10. The parties agree that Illinois law applies to the dispute. See Casey v. Am. Int'l Grp., Inc. , No. 14 C 3541, 2014 WL 5073155, at *2 (N.D. Ill. Oct. 9, 2014).

American General has asserted a number of additional arguments in support of its motion for summary judgment. In particular, it argues that Casey has waived, or is estopped from asserting, any right to the entire annuity by accepting the eight-percent share initially distributed to her. American General also argues that her acceptance of the lesser sum represents an accord and satisfaction with respect to any contract between the parties. Having found that Casey's position fails on other grounds, I do not address these further contentions.